410 So.2d 926 (1981)
TOWER HOUSE CONDOMINIUM, INC., a Non-Profit Florida Corporation, Appellant,
v.
Merton MILLMAN and Lillian Aronoff, Appellees.
No. 80-1468.
District Court of Appeal of Florida, Third District.
May 5, 1981.
Rehearing Denied September 11, 1981.
*927 Rosenberg, Rosenberg, Reisman & Glass and James E. Glass, Miami, for appellant.
Heller & Kaplan and Robert Golden, Miami, for appellees.
Before HUBBART, C.J., and SCHWARTZ and FERGUSON, JJ.
FERGUSON, Judge.
The issue on appeal is whether the purchase by a condominium association of an adjacent parcel of property to be used for additional parking at a cost of $400,000 constitutes a material alteration or modification of the appurtenances to the condominium unit so as to require an amendment to the Declaration of Condominium with approval by all unit owners.
On May 1, 1978, the Tower House Condominium Association held a properly noticed meeting attended by sixty-eight of the eighty-four unit owners. At the meeting members voted sixty-eight to zero to acquire an adjacent lot for $400,000 to provide additional parking. Each member was assessed his proportional share of $6,000. Appellees, who did not vote for the acquisition, were notified of the assessments and when they failed to pay, the Association filed claims of lien against their respective units. After a non-jury trial, the Dade County Circuit Court held that the Association could not acquire the property without the consent of all unit owners and, therefore, the assessments were illegal and the claims invalid. Final judgment was entered canceling the claims of lien and assessing special damages against the Association. We affirm.
We find Section 718.110(4), Florida Statutes (Supp. 1978)[1] and Article VII of the Declaration of Condominium controlling. Section 718.110(4) provides:
Unless otherwise provided in the declaration as originally recorded, no amendment may change the configuration or size of any condominium unit in any material fashion, materially alter or modify the appurtenances to the unit, or change the proportion or percentage by which the owner of the parcel shares the common expenses ... unless the record owner of the unit and all record owners of liens on it join in the execution of the amendment and unless all the record owners of all other units approve the amendment. (Emphasis added.)
Article VII of the Tower House Declaration of Condominium provides:
METHOD OF AMENDMENT OF DECLARATION.
This Declaration may be amended at any regular or special meeting of the Apartment Residence Owners of this Condominium, called and convened in accordance with the By-Laws of the Association, by the affirmative vote of seventy-five (75%) percent of the Apartment Residence Owners present in person or by proxy and casting votes at such meeting... . No amendment shall change any Condominium Parcel nor a Condominium Apartment Residence's proportionate share of the common expenses or common surplus, nor the voting rights appurtenant to any Apartment Residence unless all record Owner[s] and all record Owners of mortgages or other voluntarily placed liens thereon shall join in the execution of the amendment.
*928 The parking area is designated a common element by Article IV, (D) of the Declaration of Condominium.[2]
(D) The area shown on the survey and described as "Parking Area" is part of the Common Elements... . Each Apartment Residence Owner shall be entitled to the use of the parking facilities for two automobiles; however, the Owners of the Penthouse and Tower Apartment Residences shall be entitled to the use of the parking facilities for three automobiles .... All parking shall be valet parking only... .
The undivided interest of each unit owner in the common elements is set forth in Article V of the Declaration of Condominium which provides:
OWNERSHIP OF COMMON ELEMENTS: COMMON EXPENSES AND COMMON SURPLUS
(A) The undivided interest in and to the Common Elements which each Apartment Residence Owner shall own by reason of his ownership of a Condominium Parcel and/or Apartment Residence in the Condominium shall be as follows:
(i) Each Apartment Residence Owner of the Apartment Residences 01 through 04 on the third through twelfth stories, and the stories designated the fourteenth through twenty-third stories of the building, shall own an undivided 1.1407370 percent interest in and to the Common Elements; and
(ii) Each Apartment Residence Owner of Penthouse I and Penthouse II and Tower I and Tower II on the stories designated as the twenty-fourth and twenty-fifth stories of the building shall own an undivided 1.7111625 percent interest in and to the Common Elements; and
.....
(B) The fee simple title to each Condominium Parcel shall include both the Apartment Residence and the undivided interest in the Common Elements in the above-mentioned percentages of the whole
... .
This undivided interest in the parking area is made appurtenant to the condominium unit by subsection (B) of Article V quoted above and by Section 718.106(2)(a), Florida Statutes (1977) which provides: "There shall pass with a unit, as appurtenances thereto: (a) an undivided share in the common elements and common surplus." This undivided interest is also part of the condominium parcel and condominium property defined in Article I of the Declaration of Condominium as follows:[3]
(vii) Condominium Parcel means an Apartment Residence together with the undivided share in the Common Elements which is appurtenant to the Apartment Residence.
(viii) Condominium Property means the real property herewith submitted to Condominium ownership, being that property described in Exhibit "A", including all improvements located thereon and all easements and rights appurtenant thereto intended for use in connection with the Condominium.
Article VII, (3)(D) of the Tower House By-Laws provides:
D. The Board of Directors may not authorize or make any additions or capital improvements to the Condominium Property at a cost in excess of Twenty Thousand Dollars ($20,000.00) without first securing a three-fourths (3/4) vote of all Members constituting a quorum at the Meeting called for the purpose of considering said additions or improvements, excepting that in cases of emergency, and in order to protect the Condominium Property, Board of Directors may, in *929 their sound judgment, make repairs to the Condominium Property in excess of said Twenty Thousand Dollars ($20,000.00).
Article V, Section 6 of the By-Laws provides:
Section 6. VOTE REQUIRED TO TRANSACT BUSINESS: When a quorum is present at any Meeting, the vote of seventy-five (75%) percent of the Members present, in person or represented by written proxy, shall decide any question brought before the Meeting, unless the question is one upon which, by express provision of the statutes or of the Certificate of Incorporation or of these By-Laws, a different vote is required, in which case such express provision shall govern and control the decision of such question.
Article I of the Declaration of Condominium provides in relevant part:
(A) Except where permissive variances therefrom appear in this declaration, this Declaration, the Articles of Incorporation ... or the By-Laws ... the provisions of the Condominium Act ... are adopted herein by express reference as if set forth herein in full, and the Condominium Act, and this Declaration, and the Articles of Incorporation and By-Laws of the Association, as lawfully amended from time to time %(3)27 shall govern this Condominium and the rights, duties and responsibilities of the Owners of the Condominium Parcels therein.
Article XV Section 1 of the By-Laws provides:
The contract documents relating to this condominium and the ownership of a Condominium Parcel therein shall include the Declaration of Condominium ..., these By-Laws, the Charter of the Association, and the pertinent statutes from time to time pertaining thereto, all as amended from time to time in accordance with law... .
Construing the foregoing sections of the Declaration of Condominium, By-Laws, and statutes as a whole, the association's argument that the property in question could be acquired upon affirmative vote of only seventy-five percent of a quorum[4] of unit owners as provided by Article VII, (3)(D) of the By-Laws, supra, was properly rejected by the trial court. The Association correctly argues that provisions of the Condominium Act as amended from time to time automatically became part of the documents of Tower House Condominium by the language of Article I of the Declaration. See note 1, supra. This includes Section 718.110(4), Florida Statutes (Supp. 1978). If the terms of Section 718.110(4) are inconsistent with the Declaration or By-Laws, the statutory provision prevails. Article I(A), Declaration, supra, Article V, Section 6, By-Laws, supra.
We must first determine whether the acquisition of the parking area is a material alteration or modification of the appurtenances to a unit requiring amendment to the Declaration.[5] In Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971) the court stated:
[A]s applied to buildings the term "material alteration or addition" means to palpably or perceptively vary or change the form, shape, elements, specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use, or appearance.
This definition applies equally as well to changes in common elements. The acquisition of a $400,000 piece of property to be used as an addition to the parking area which increases that area by one-third of its size, and changes the number of parking *930 spaces owned by the unit owner is a material alteration or modification of the common area, and, of the unit owner's interest in the appurtenances to the condominium unit.[6] Because a unit owner's undivided share in the parking area is appurtenant to the unit, Section 718.106(2)(a), Florida Statutes, supra, and part of the fee simple, Article V, Declaration of Condominium, supra, the parking area itself is necessarily appurtenant to the unit, even if regulated by the Association. See Ackerman v. Spring Lake of Broward, Inc., 260 So.2d 264, 266 (Fla. 4th DCA 1972) (citing § 711.04, Fla. Stat. (1969), now § 718.106(2)(a); recreation area part of common elements is appurtenant to condominium units).[7] An undivided interest is an undivided interest in the whole and when that whole changes, that interest, if not the percent, also changes. See also Blacks' Law Dictionary (5th ed. 1979) ("A thing is `appurtenant' to something else when it ... is necessarily connected with the use and enjoyment of the latter ... [or] used with the land for its benefit").
Article VII of the Declaration of Condominium is consistent with § 718.110(4), supra, in providing that any change in the condominium parcel, i.e., the unit and the interest in the common elements,[8] requires the vote of all unit owners.
Article VII(3)(D) of the By-Laws, as applied herein by the Association, is inconsistent with the Declaration and § 718.110(4), supra, in that it permits material alterations or modification by less than a vote of all unit owners and is, therefore, invalid.
Under the circumstances of this case, the purchase of the lot materially modifies the owner's interest in the common elements which are appurtenant to the unit and, therefore, changes the condominium parcel. Such a change requires the vote of all record owners of the condominium units. Article VII, Declaration of Condominium, § 718.110(4), Fla. Stat. (Supp. 1978).
The Association also challenges the award of attorney's fees to Millman and Aronoff by the trial court. We affirm also the award of fees. The prevailing party in an action brought pursuant to the provisions of Chapter 718, Florida Statutes (1979) is entitled to recover reasonable attorney's fees. Section 718.303(1), supra.
AFFIRMED.
NOTES
[1] Appellant notes in its brief that the provisions of the Condominium Act as amended from time to time automatically became a part of the controlling documents of the Tower House Condominium. Kaufman v. Shere, 347 So.2d 627 (Fla.3d DCA 1977), cert. denied, 355 So.2d 517 (Fla. 1978).
[2] See also § 718.108(2), Fla. Stat. (1977) providing for designation of common elements within a declaration of condominium.
[3] See also §§ 718.103(10) and (11), Fla. Stat. (Supp. 1978).
[4] A quorum is defined in Article V, Section 5 of the By-Laws as seventy-five (75%) percent of the total number of members of the Association, present in person or represented by written proxy.
[5] We are not here concerned with change in the proportion or percentage by which an owner of the parcel shares the common expenses. See, e.g., Bayshore Cooperative, Inc. v. Russcol, 386 So.2d 1207 (Fla. 3d DCA 1980); Thiess v. Island House Association, Inc., 311 So.2d 142 (Fla. 2d DCA 1975).
[6] This case is distinguishable from Juno By the Sea North Condominium Association, Inc. v. Manfredonia, 397 So.2d 297 (Fla. 4th DCA 1981) where the court found no material alteration of the common elements in a plan to assign existing individual parking places. No purchase or change in size of parking area was involved. The court in Juno, supra, notes in footnote seven that if the owner' share in common element is altered, the Declaration requires consent of all unit owners.
[7] In Juno, note six supra, unlike this case, an interest in the 50 parking spaces apparently did not pass with the fee simple title to each unit. We do not agree with the suggestion by the 4th District in Juno, supra, that common elements subject to continuing regulation by the Association may not pass as appurtenances to individual units. See Ackerman, supra. See, e.g., Porter v. Hollander, 494 F. Supp. 151 (D.Del. 1980) citing §§ 711.06 and 711.07, Fla. Stat. (1975) (ownership in mixed leasehold and fee simple interest in all common elements not violative of Condominium Act); Mayfair Engineering Co. v. Park, 318 So.2d 171 (Fla. 4th DCA 1975) ("while under this Declaration it is clear that the developer did not retain ownership of the ... parking spaces (except to the extent that such was retained as in undivided interest appurtenant to the unsold condominium units) ... undoubtedly he retained ... the right to assign their exclusive use").
[8] See also Article I(vii), supra.