716 So.2d 807 (1998)
Maria H. BROWN, Appellant,
v.
Edward G. RICE and Joan A. Rice, et al., Appellee.
No. 97-702.
District Court of Appeal of Florida, Fifth District.
July 24, 1998.
Allan P. Whitehead and Michael M.M. Wallis of Mosley, Wallis & Whitehead, P.A., Melbourne, for Appellant.
William E. Weller of Rose and Weller, Cocoa Beach, for Appellee.
*808 ANTOON, Judge.
The controlling issue in this case is whether a condominium unit owner possesses the authority to convey a limited common element. The trial court determined that section 718.107 of the Florida Statutes (1993), prohibited such a conveyance. We agree and therefore affirm.
The Windrush Condominium in Cocoa Beach consists of 126 living units and 112 garages. The Declaration of Condominium (Declaration) described the garages as limited common elements and authorized the developer to assign the garages to certain unit owners. The developer assigned garage A-12 to the original purchaser of living unit 511 who paid an additional sum in order to obtain the exclusive use of the garage. Thereafter, unit 511, along with the garage, exchanged ownership several times and was eventually purchased by Marie Young. After Young purchased the unit, she executed a quit claim deed purporting to convey the "use" of garage A-12 to the appellant, Maria Brown, who owned living unit 701. Specifically, the quit claim deed purported to convey:
The exclusive use of that limited common element described in the Declaration of Condominium as Garage No. A-12, which is an appurtenance to UNIT No. 511, in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of the Declaration of Condominium of WINDRUSH, ...
Sometime later the appellees, Edward and Joan Rice, purchased unit 511. After the sale was completed, the Rices learned that as owners of unit 511 they had a claim to the exclusive use of garage A-12. Upon making this discovery, the Rices initiated an action with the State of Florida Department of Business and Professional Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes (the Department), seeking to have their right to use garage A-12 recognized. The Rices argued that Young's quit claim deed, which purported to convey the right to use garage A-12 to Brown, was a nullity because the garage could not be conveyed separately from living unit 511 since it was a limited common element which was at all times appurtenant to living unit 511. The Department properly took jurisdiction and arbitrated the dispute pursuant to rule 61B-45.013(1) of the Florida Administrative Code and section 718.1255 of the Florida Statutes (1993). Upon review, the Department issued a final summary judgment in favor of the Rices.
Following entry of the Department's adverse ruling, Brown sought a trial de novo in the circuit court pursuant to section 718.1255(4)(c) of the Florida Statutes (1993). After conducting a hearing, the trial court determined there were no disputed factual issues and entered summary judgment in favor of the Rices. Brown appeals that ruling.
Before proceeding further, it is necessary to review certain statutory provisions pertaining to condominium ownership. A condominium is defined as "that form of ownership of real property ... which is comprised of units that may be owned by one or more persons, and in which there is, appurtenant to each unit, an undivided share in common elements." § 718.103(10), Fla. Stat. (1993). "Common elements" are defined as "portions of the condominium property which are not included in the units." § 718.103(7), Fla. Stat. (1993). Furthermore, "limited common elements" are "those common elements which are reserved for the use of a certain condominium unit or units to the exclusion of other units, as specified in the declaration of condominium." § 718.103(17), Fla. Stat. (1993).
The determination of whether a common element is a limited common element depends solely upon the designation set forth in the property's declaration of condominium. See § 718.106(2)(b), Fla. Stat. (1993). Here, a provision pertaining to the exclusive use of garages was included in the Windrush Declaration. Specifically, Article IV, Apartment Boundaries, Common Elements, and Limited Common Elements provided, in relevant part:
There are limited common elements appurtenant to each of the units in this condominium, as shown and reflected by the floor and plot plans. These limited common elements are reserved for the use of the units appurtenant thereto, to the exclusion *809 of other units, and there shall pass with a unit, as appurtenant thereto the exclusive right to use the limited common elements so appurtenant. In addition, there are One Hundred Twelve (112) garages numbered A-1 through A-32 inclusive,... which are more specifically shown in Exhibit "A" attached hereto, which the Developer reserves the right to designate for the exclusive use to the individual unit owners, which said spaces are hereby made limited common elements.

(Emphasis added). Thus, garage A-12 was a limited common element of the Windrush Condominium property appurtenant to living unit 511.
Without distinguishing the more general concept of common elements from the narrower concept of limited common elements, our legislature specifically restrained the conveyance of all common elements which are appurtenant to a living unit. In this regard, section 718.107(2) of the Florida Statutes (1993) entitled, "Restraint upon separation and partition of common elements," provided that "[t]he share in the common elements appurtenant to a unit cannot be conveyed or encumbered except together with the unit." To further prevent the separate conveyance of a condominium unit and an appurtenance thereto, section 718.109 of the Florida Statutes (1993) requires that every legal description of a condominium living unit shall include "all appurtenances to the unit concerned, whether or not separately described, including, but not limited to, the undivided share in the common elements appurtenant thereto." By enacting these statutes, our legislature has specifically prohibited the conveyance of all common elements, including limited common elements, unless such an interest passes along with the title to the living unit. See Juno By The Sea North Condominium Ass'n, Inc. v. Manfredonia, 397 So.2d 297, 302-03 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 611 (Fla.1981) (ruling that limited common elements are an appurtenance of the unit and pass with the unit when legal title is conveyed). As a result, the trial court properly concluded that Ms. Young's separate conveyance of garage A-12 to Ms. Brown was unauthorized. See § 718.107, Fla. Stat. (1993).
Ms. Brown's primary argument on appeal is that section 718.107(2) does not apply to the facts of the instant case because the quit claim deed from Ms. Young did not convey an interest in real property, but instead, the deed merely gave Ms. Brown the right to use the garage.[1] In other words, Ms. Brown essentially maintains that she received a license to use garage A-12. A license is merely the right to use another's property. Unlike an easement, the grant of a license does not convey any interest in the land; therefore, it generally may not be assigned or conveyed. See Dotson v. Wolfe, 391 So.2d 757, 758 (Fla. 5th DCA 1980). Instead, a license is a personal privilege and is automatically extinguished upon the sale or conveyance of the servient property. See Devlin v. The Phoenix, Inc., 471 So.2d 93, 95 (Fla. 5th DCA), rev. denied, 480 So.2d 1295 (Fla.1985). As a result, if we were to accept Ms. Brown's assertion that, by executing the quit claim deed, Ms. Young conveyed a license in Ms. Brown's favor, then Ms. Brown's right to use garage unit A-12 automatically terminated when Ms. Young's interest in living unit 511 was conveyed to the Rices.
The dissent, reaching well beyond the arguments presented both at trial and on appeal, interprets Article IV of Windrush's Declaration as establishing two categories of limited common elementsone consisting of balconies and patios and the other consisting of the garages. The dissent contends that the garages are not appurtenant to the living units because their ownership was not assigned at the time of the filing of the Articles of Condominium, and, as a result, they may be freely transferred from one living unit *810 owner to another. However, neither Windrush's Declaration nor chapter 718 recognizes such a dichotomy.
In our view, the garage units are appurtenant to the living units to which they were assigned by the developer. Although chapter 718, Florida Statutes, does not include a definition of "appurtenant," Black's Law Dictionary 103 (6th Ed.1990), defines the term as "belonging to; accessory or incident to; adjunct, appended, or annexed to...." Applying this definition, we conclude that the developer made the garage units appurtenant to the living units to which they were assigned by referring to the garage units as limited common elements designated for the exclusive use to the individual unit owner. Furthermore, the garage units meet the definition of limited common elements provided in section 718.103(13) in that they are common elements reserved for the use of certain unit owners to the exclusion of others.
We note further that, even if the dissent is correct in its view that garage A-12 was not a limited common element because it was not assigned at the time the Declaration was executed, the garage would at the very least constitute a common element. As previously discussed, section 718.107(2) of the Florida Statutes (1993) prohibited the conveyance of common elements separate from the living unit. Additionally, Article III of Windrush Condominium's Declaration of Condominium, Ownership of Apartments and Appurtenant Share In Common Elements and Common Surplus, and Share of Common Expenses, provided, in relevant part:
Each apartment shall be conveyed as an individual property capable of independent use and fee simple ownership and the owner or owners of each apartment shall own, as an appurtenance to the ownership of each said apartment, an undivided one-ninety-eighth (1/98) share of all common elements of the condominium, which includes, but is not limited to, ground support area, walkways, yard area, parking areas, foundations, etc.... Any undivided interest in the common property is hereby declared to be appurtenant to each unit and such undivided interest shall not be separated from the unit and such interest shall be deemed conveyed, devised, encumbered or otherwise included with the unit even though such interest is not expressly mentioned or described in the conveyance, or other instrument.
We respect the position advocated by the dissent because we know that it is asserted out of the sincere belief that it is legally correct. However, we have done what the law requires of us. In that regard, we have worked with the laws the legislature has provided and the arguments that the lawyers presented to the trial court. Perhaps the dissent is correct that our legislature did not intend to limit conveyances of limited common elements from one unit owner to another; however, the wording of the statute is clear. While the common law is not fixed and immutable, but instead, dependent upon judicial shepherding in refining, clarifying, augmenting, and developing legal principles when a statute is unclear, it is not our role as intermediate appellate judges to substitute the legislature's policy with our own. See University of Arizona Health Sciences Center v. Superior Court, 136 Ariz. 579, 667 P.2d 1294, 1301 (1983)(Gordon, Vice Chief Justice, concurring in part, dissenting in part). In short, legislating is best left to the legislature and lawyering is best left to lawyers.
The dissent states that restraints against the transfer of limited common elements from one living unit owner to another are unreasonable, implying that such restraints are unconstitutional. The problem with this expedient approach to the resolution of the instant appeal is that a challenge to the constitutionality of the statute was never raised by Ms. Brown in the trial court. We refuse to reverse a trial court's decision when the trial court dutifully fulfilled its responsibility by making the difficult decisions we require of it simply because we can devise a better result for the party we think should prevail.
AFFIRMED.
GRIFFIN, C.J., concurs.
HARRIS, J., dissents, with opinion.
*811 HARRIS, Judge, dissenting.
I respectfully dissent.
Windrush Condominium had 126 living units but only 112 garages. Therefore, all owners of living units in the condominium cannot have a garage, and so obviously there is not a garage "appurtenant" to each unit. The condominium documents do not assign a garage to any particular living unit. The exclusive use of the garages was sold separately by the developer for $5,000 each pursuant to a provision in the condominium documents by which the developer reserved the right "to designate for the exclusive use of the individual unit owners" such garage units. Notice that the right of exclusive use flows from the developer to the unit owners and not to the units. There is nothing in the condominium documents that prohibits one who has acquired the exclusive use of a garage unit, for a separate consideration, from conveying his exclusive use of the garage to another unit owner. The original purchaser of living unit 511 also acquired the exclusive use of garage unit A-12. This was an independent election by that owner and required additional consideration. Marie Young ultimately purchased living unit 511 as well as the right to the exclusive use of the garage. When Ms. Young determined that she did not need the use of the garage, she "sold" its use to Maria Brown for $5,000. Subsequently Ms. Young sold her living unit without the right to the exclusive use of a garage to the Saners, who in turn sold the living unit, also without the exclusive use of a garage, to Edward G. and Joan S. Rice. Sometime following the purchase of the living unit, the Rices took the position that they were entitled to garage unit A-12 because section 718.107, Florida Statutes, prohibits the separation of the undivided share in common elements which are appurtenant to a unit. Since, according to the Rices, the garage is a common element appurtenant to their unit, the conveyance to Ms. Brown should be held invalid. The trial court (and the majority herein) bought this argument and granted a summary judgment holding in effect that once a unit owner purchases the exclusive use of a garage unit, he or she is foreclosed thereafter from ever conveying his or her interest in the use of the garage. I disagree.
It seems apparent from a reading of Article IV of the Declaration of Condominium that there are two types of limited common elementsthose that are essential to the use and enjoyment of a living unit (balconies and patios) and which pass with the unit, and those that are not (garages) and do not.[1] Those limited common elements which pass with the unit according to the Declaration are:
There are limited common elements appurtenant to each of the units in this condominium, as shown and reflected by the floor and plot plans. These limited common elements[2]are reserved for the use of the units appurtenant thereto, to the exclusion of other units, and there [sic] shall pass with a unit, as appurtenant thereto, to the exclusive right to use the limited common elements so appurtenant. (Emphasis added.)
Since the limited common elements referred to as being non-transferable are those appurtenant to each unit and which are apparent from the original condominium documents, *812 one must look to the "floor and plot plan" to see which limited common elements are inalienable. Those documents reflect that the patios and the balconies adjacent to the units are "common areas limited to the use of those units." This distinguishes them from the exclusive use of garages which are to be sold to some of the unit owners (those who are willing to pay extra for them) but which are not available to each unit and which cannot be connected to any particular unit by viewing the condominium documents. It is submitted that had the developer intended that once the exclusive use of a garage was acquired it would become forever linked to the living unit owned by the purchaser, then an amendment to the condominium documents would have been filed reflecting that the exclusive use of a particular garage was a "common element limited to the use of" some particular living unit. The common elements intended to be subject to the restraint on alienation are only those common elements which are essential to the integrity of each unit and shown on the plot plan.
The common elements not subject to conveyance were those made a part of the living unit without an additional price being charged. The living unit would be incomplete without these common elements. Their separation from the living unit would affect the intended utility of the living unit as envisioned by the condominium documents. There is a reason for restricting alienation as it relates to these limited common elements. But what reason supports a holding that although the developer can convey the exclusive use of a garage to any owner of a living unit it chooses, a purchaser from the developer cannot? If the developer had intended that the exclusive use of a garage once sold would forever remain with the original purchaser's unit, and not be subject to transfer to another unit, it should have so provided. It is evident that Ms. Young and Ms. Brown did not believe that Ms. Young could not convey her exclusive use of the garage. Because a restraint on alienation is not favored by the courts, it should not be found by implication.
The restraint on the alienation of the common elements referred to above should be limited to those common elements which every unit enjoys. In Article III of the Declaration, the concept of those things appurtenant to all units is more fully developed:
[T]he owners of each apartment shall own, as an appurtenant [sic] to the ownership of each said apartment, an undivided ... share of all common elements of the condominium, which includes, but is not limited to, ground support area, walkways, yard area, parking areas, foundations, etc.... Any undivided interest in the common property is hereby declared to be appurtenant to each unit and such undivided interest shall not be separated from the unit and such interest shall be deemed conveyed, devised encumbered or otherwise included with the unit even though such interest is not expressly mentioned or described in the conveyance, or other instrument.
To consider the exclusive use of a garage as an appurtenance that runs with the living unit without even being included in the description in the conveyance would require a holding that the deed to each living unit carries with it the exclusive use of a garage. Since there are more living units than garages, this is simply not possible. Thus, the exclusive use of a garage is not an appurtenance included in the conveyance of the living unit or else every unit would have one. The developer reserved the right to convey the exclusive use of a garage to whichever condominium owner was willing to pay the price. It is apparent, therefore, that whether this or that owner purchased the exclusive use of a garage would have no effect on the overall purpose of the project or the complete use and enjoyment of any individual living unit. There is nothing that physically links living unit 511 to garage unit A-12. And living unit 511 is no more entitled to the exclusive use of a garage than units 512 or 714. There is nothing about the design or purpose of the condominium that would indicate that a particular garage once associated with one unit should not be able to become associated with another if the one entitled to its use wishes to convey it. Even if we refer to this "association" as an appurtenance, still *813 there is no reason that we should not recognize "a shifting garage appurtenance" from one unit to another. Although the garage is a "limited common element," this means only that the one who has acquired it is entitled to its exclusive use. I agree that an owner may not convey his living unit and yet retain ownership of his garage. That is because the use of the garage must be by the owner of a living unit. The Declaration does not prohibit, however, the shifting of a limited common element which is not essential to the use and enjoyment of each unit to another unit owner so that it becomes connected to another living unit within the condominium project.
Section 718.107, Florida Statutes, is simply inapplicable. It does not prohibit the conveyance of the exclusive use of a limited common element (the garage) by one owner of a living unit to another owner of a living unit. By its terms, it applies only to "the undivided share in the common elements." The definition section of chapter 718 makes clear that there is a statutory distinction between "common elements" and "limited common elements." The majority opinion concludes that because the legislative definition of "common elements" is broad enough to include even limited common elements, the legislature must have intended that even the exclusive use of those limited common elements purchased separately and for additional consideration could not be conveyed even as between unit owners. This is an overly-mechanical, too-simplistic reading of the statute. Would granting a unit owner, foreclosed from initially purchasing the use of a garage because there were too few to go around, the opportunity to purchase one later from an owner who no longer needs a garage really upset some divine plan devised by the condominium developer or the state legislature? I think not. By its language, the statute only prohibits alienation of an "undivided share in the common elements."[3] Ms. Young did not own an undivided share in the use of the garage; she owned it all. She did not convey an undivided share in anything; she conveyed her entire exclusive right to use the garage. After her conveyance of her exclusive use of the garage, she retained all of the undivided interest in the common elements that she ever had and exactly the same interest that any other owner has "in common." Thus the "common elements" made subject to the statutory restraint on alienation do not include, even by implication, the exclusive use of garages which are conveyed separately, for a separate consideration, and which permit the purchaser to enjoy its exclusive use. To construe the provision otherwise would be in conflict with Section 2, Article I of the Florida Constitution.
An appellate court, I am often told, is a court of error and not a court of justice. I accept this proposition as a general statement of our function. But experience has taught that in many of our cases interpretation of statutes or documents is required. This interpretation process often offers an array of options some of which lead to a fair and reasonable result and some to an unjust and unreasonable end. Few would suggest that it is either fair or reasonable to require Ms. Brown who paid $5,000 for the exclusive use of the garage and who has used the garage for some time and throughout the ownership of the immediate predecessor of Mr. Rice without any complaint, to now deliver the garage to Mr. Rice who neither paid a farthing for it nor believed at the time he purchased the unit that a garage went with it. I believe when possible, when the statute or document will fairly permit it, that we should come down on the side of fairness and reasonableness. This "rule" of construction is neither original, new nor outlandish. See State ex rel. Bash v. County Commissioner of Jefferson County, 20 Fla. 425, 432 (Fla. 1884) (Courts in construing a statute should, in so far as the language will admit, give such *814 a construction thereto as will make it practical, just and reasonably convenient.) Does the statute relied on by the majority unambiguously compel the conclusion that if there are fewer garages than units and the developer retains the right to assign the available garages to certain of the unit owners at an additional price, that those who purchase from the developer cannot also convey the use of the garage? Of course not. Does the only reasonable interpretation of the documents prevent a unit owner who was initially able to acquire the use of a garage from the developer from conveying that use to a fellow unit owner who was unable to originally obtain the use of a garage, and by such conveyance perhaps receive a better return on his investment, and instead require that he pass his exclusive use of the garage on to his unit successor? I think not.
Because the statute does not prohibit the transfer as between unit owners of the exclusive use of a garage, and because the Declaration does not preclude subsequent transfers of the exclusive use of a garage, I would reverse the summary judgment. Because the Rices purchased their unit knowing that there was no right to the exclusive use of a garage included in their purchase and did not pay separate consideration for the exclusive use of a garage, no injustice results from permitting Ms. Brown, who acquired the right to use the garage, from having that right now considered as "an appurtenance" to her unit.
NOTES
[1] Ms. Brown also argues that (1) the state did not have jurisdiction to compel Brown and Rice to arbitrate pursuant to section 718.1255, Florida Statutes (1995), and rule 61B-45.013 of the Florida Administrative Code, and (2) material facts existed precluding entry of final summary judgment. Since the trial court conducted de novo review, Brown's first claim is irrelevant to the outcome of this appeal. Furthermore, since this matter pertains to issues of law, the presence of disputed facts is also irrelevant.
[1] The majority is concerned that for this analysis I have gone "beyond the argument" that the lawyers presented here or below. I have. While it was not suggested by the attorneys that there is a dichotomy in limited common elements, the issue here and below is whether the condominium documents (or the statute) prohibit the alienation of limited common elements. Those documents are before us to read. It appears to me that the law applicable to a given issue and on a particular set of facts, if that law can ever be found, is the law whether or not we find it. We should look for that law. It is the lawyers' obligation to establish the facts below and to choose the issues on appeal and properly preserve such issues for our review. We are limited to those issues and restricted to those facts. However, determining the appropriate law is our responsibility and we should not be herded into bad law because of the lawyers' incomplete analysis.
[2] By using the term "these limited common elements," it is clear that the reference is to the common elements which are both appurtenant to a particular unit and are reflected on the plot plan as indicated by the language immediately preceding the use of the term. "These" are the only limited common elements that are "reserved for the use of the units appurtenant thereto" and which automatically pass with the unit.
[3] The condominium documents grant a particular undivided percentage in the common elements to each unit owner. An example of the common elements so apportioned are "ground support area, walkways, yard areas, parking areas, foundations, etc." If this interest could be separated from the living unit then the owner of the living unit and his successors in interest would have no right to use in common the yard, the walkways, or the common parking area. In short, he would be unable to enjoy his living unit. In this case, we are not talking about the conveyance of Ms. Young's undivided interest in the common elements, we are dealing with the conveyance of her unshared exclusive use of the garage.