981 So.2d 566 (2008)
Steven McALLISTER, Appellant,
v.
BREAKERS SEVILLE ASSOCIATION, INC., Appellee.
No. 4D07-2003.
District Court of Appeal of Florida, Fourth District.
May 7, 2008.
*569 Jessica Slatten and Robert Rivas of Sachs & Sax, Tallahassee, for appellant.
Mark S. Mucci of Benson, Mucci & Associates, LLP, Coral Springs, for appellee.
HAZOURI, J.
Steven McAllister appeals the final judgment entered in his action for disparagement of title, loss of rental income, and declaratory relief, against Breakers Seville Association, Inc. ("Association"). The Association cross-appeals. We affirm in part and reverse in part.
The Association is a non-profit cooperative association that owns an eight-unit apartment building in Fort Lauderdale, Florida. McAllister owns the real property upon which the building sits, and leases the property back to the Association through a 99-year ground lease. McAllister also owns shares representing ownership in two of the units, units 1 and 2. Unit 1, purchased by McAllister in 1995, is the only two-bedroom unit in the building. Unit 2, purchased in 1994, is an efficiency.
In 1996, a dispute arose between McAllister and the Association over his right to park more than one vehicle in the parking space assigned to unit 1 and his right to park his motorcycle at the apartment building pursuant to the cooperative's bylaws. Another dispute arose regarding McAllister's alleged failure to pay a special assessment to upgrade the plumbing system and unit screen enclosures. McAllister was assessed various fines for his violations, which resulted in liens following non-payment. In late 1996, the Association filed suit to foreclose on a lien recorded against McAllister for failure to pay the special assessment.
McAllister filed a third amended counterclaim alleging three counts. Count I asserted disparagement of title. McAllister alleged that the Association recorded a false lien which induced others not to rent his unit, thus, causing special damages. Count II sought damages for loss of rental income from the date the lien was recorded through 2004, when the Association allegedly stopped interfering with McAllister's ability to rent his units without cause. Count III sought declaratory relief regarding McAllister's entitlement to the parking space allegedly assigned to unit 1.
In 1999, the trial court dismissed the foreclosure action with prejudice on McAllister's motion for summary judgment, finding that the Association prematurely filed the foreclosure action and failed to obtain the required votes to file the action under the bylaws. The trial court ordered that the case proceed to trial on McAllister's counterclaims. Thereafter, the trial court held a final hearing and found for the Association on Count I of the counterclaim, and rendered Counts II and III moot. McAllister appealed the final judgment. This court reversed, finding that "entry of a final judgment was error because no notice of trial was properly given." McAllister v. Breakers Seville Ass'n, 891 So.2d 1155, 1156 (Fla. 4th DCA 2005).
After a trial on remand, the trial court found that the Association had no authority to prohibit the parking of the motorcycle and demand its removal until 2000, when it enacted a "valid" and "proper" amendment. Because the trial court *570 deemed the 2000 amendment concerning the motorcycle valid, it found that McAllister cannot keep a motorcycle on the premises.
The trial court determined further that bylaw amendments passed in 1996 and 1997 were not properly passed, and therefore, unenforceable. The trial court stated that although it had questions concerning the validity and enforceability of amendments enacted in 2000, it found them valid and enforceable, including the amendment restricting each parking space to one vehicle. The trial court found that the driveway to the east of unit 1 is not an appurtenance to the unit, is not a part of the unit, and that section 719.1055, Florida Statutes, does not prevent the Association from amending the bylaws to restrict the use of the parking space to one vehicle.
On the disparagement of title claim, the trial court found in favor of McAllister. It concluded that there was evidence and testimony to support the claim that the Association disparaged title to his unit by its actions and improperly prevented him from renting his units. Specifically, the trial court stated: "[T]he Board of Directors of [the Association], through various actions, treated McAllister as if he had a target on his back that the Board was shooting at, and the evidence supports an award of these damages." McAllister was awarded $44,880 in damages, plus interest.
McAllister's first argument on appeal is that the trial court erred in declining to enter a declaratory judgment that the parking space assigned to unit 1 was an appurtenance to the unit, thus allowing the 2000 bylaw amendment creating a "one vehicle per space" parking restriction to stand. We agree.
In Lawyers Title Insurance Co. v. Novastar Mortgage, Inc., 862 So.2d 793 (Fla. 4th DCA 2003), this court stated:
It is well-settled that a trial court's ruling comes to this court clothed with a presumption of correctness and the burden is on appellant to demonstrate error. A trial court's findings of fact in a declaratory judgment action will be upheld if supported by competent substantial evidence. Conversely, any conclusions of law are reviewed de novo.

Id. at 796-97 (citations omitted).
This issue turns on whether the parking space in question is an appurtenance to unit 1. Section 719.1055(1), Florida Statutes (2000), provides:
Unless otherwise provided in the original cooperative documents, no amendment thereto may change the configuration or size of any cooperative unit in any material fashion, materially alter or modify the appurtenances of the unit, or change the proportion or percentage by which the owner of the parcel shares the common expenses and owns the common surplus, unless the record owner of the unit and all record owners of liens on it join in the execution of the amendment and unless the record owners of all other units approve the amendment. Cooperative documents in cooperatives created after July 1, 1994, may not require less than a majority of total voting interests for amendments under this section, unless required by any governmental entity.
Therefore, if the parking space is an appurtenance, the Association cannot materially alter or modify it without McAllister's consent. Section 719.105(1), Florida Statutes (2000), addresses appurtenances in the context of cooperatives:
(1) Each cooperative parcel has, as appurtenances thereto:
(a) Evidence of membership, ownership of shares, or other interest in the association with the full voting rights appertaining thereto. Such evidence must include *571 a legal description of each dwelling unit and must be recorded in the office of the clerk of the circuit court as required by s. 201.02(3).
(b) An undivided share in the assets of the association.
(c) The exclusive right to use that portion of the common areas as may be provided by the cooperative documents.
(d) An undivided share in the common surplus attributable to the unit.
(e) Any other appurtenances provided for in the cooperative documents.
"Cooperative documents" are defined as:
(a) The documents that create a cooperative, including, but not limited to, articles of incorporation of the association, bylaws, and the ground lease or other underlying lease, if any.
(b) The document evidencing a unit owner's membership or share in the association.
(c) The document recognizing a unit owner's title or right of possession to his or her unit.
§ 719.103(13), Fla. Stat. (2000).
Further, several cases cited by McAllister support the notion that courts must look to the governing documents to determine what constitutes an appurtenance.[1] In Maass v. Christensen, 414 So.2d 255 (Fla. 4th DCA 1982), this court noted that an assigned parking space was an appurtenance to the unit to which the space was assigned because all of the condominium documents at issue, including the declaration and bylaws, "tie[d] assigned parking spaces to apartment ownership." Id. at 257. Consequently, this court concluded that the assigned parking space was an appurtenance to the unit. Id.
Similarly, in Tower House Condominium, Inc. v. Millman, 410 So.2d 926 (Fla. 3d DCA 1981), the Third District held that the condominium documents established that a unit owner's undivided share in the parking area, a common element, constituted an appurtenance to his unit. Id. at 930. Accordingly, no material alterations or modifications could be made to the parking area without the vote of all record owners of the condominium. Id.
Finally, in Brown v. Rice, 716 So.2d 807 (Fla. 5th DCA 1998), the Fifth District held that a garage that had been assigned to a specific condominium unit by the developer was appurtenant to the unit and, therefore, could not be conveyed separately from the unit. Id. at 810. In so holding, the court relied upon the condominium documents and the following definition of "appurtenant" from the Sixth Edition of Black's Law Dictionary: "belonging to; accessory or incident to; adjunct, appended, or annexed to. . . ." Id.
Although the trial court stated that it considered the cooperative documents in determining that the parking space was not an appurtenance, this court reviews that question de novo. See Lawyers Title, 862 So.2d at 797. We reverse on this issue because we agree with McAllister's contention that the cooperative documents establish that the parking space in question is an appurtenance to unit 1, and therefore, the Association could not materially alter the space without McAllister's consent.
Under the proprietary lease, which constitutes a "cooperative document" under section 719.103(13)(a), shareholders take title to their units and "the [unit's] appurtenances." Further, each assignment of the proprietary lease for unit 1, including *572 the assignment to McAllister from the previous owner, Alberto Mejia ("Mejia"), assigns the unit and "one (1) allocated parking space." The purchase and sale agreement for unit 1 between Mejia and the previous owner provides that parking for the unit shall be in the "[d]riveway on [the] east side not designated by number," which refers to the parking space in question, without dispute. The Association approved this purchase and sale contract, and George Martin ("Martin"), the Association's president, served as the real estate agent for the deal. We find that this contract satisfies the definition of a "cooperative document" under section 719.103(13)(c), as a "document recognizing a unit owner's title or right of possession to his or her unit."
Because the cooperative documents, as defined in section 719.103(13)(c) and when viewed as a whole, provide that the parking space in question is an appurtenance to unit 1, we conclude that the trial court erred in finding otherwise. We also find it persuasive that the undisputed facts establish that unit 1's assigned parking space has always been the parking space in question. Also, when the Association amended its bylaws in 2000, enacting the amendment in question, it assigned the parking space at issue to unit 1. Finally, in 1996, the Association approved a rental agreement for unit 1 between McAllister and two tenants, which explicitly stated that the tenants were renting a "single family apartment with one (maximum two car) parking space."
In response, the Association maintains that McAllister can establish that the parking space is an appurtenance to unit 1 only if he "[proves that] his right originated from the cooperative documents, [shows] the legal description of that area, and [establishes that] the legal right to [his] interest [in the parking space is] recorded." However, this claim is based upon an erroneous interpretation of section 719.105(1). A party is not required to prove all of the subsections of section 719.105(1) to establish an appurtenance. Rather, section 719.105(1) lists several types of appurtenances. The plain language of paragraph (e), "Any other appurtenances provided for in the cooperative documents," does not require a legal description or recordation. See § 719.105(1)(e), Fla. Stat. (2000).
Because we find that the parking space is an appurtenance to unit 1, we must next determine whether the 2000 bylaw amendment limiting parking to "one vehicle per space" materially altered or modified the appurtenance, such that McAllister's consent was required. See § 719.1055(1), Fla. Stat. (2000). There are no facts in dispute with respect to this issue, and therefore we conclude that the bylaw constitutes a material alteration or modification.
In Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971), this court stated:
(A)s applied to buildings the term "material alteration or addition" means to palpably or perceptively vary or change the form, shape, elements or specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use, or appearance.
Id. at 687. The court in Tower House determined that the Sterling Village definition applied equally as well to changes in common elements, including a parking area, the owner's share of which was found to be appurtenant to the unit. Tower House, 410 So.2d at 929-30. We find that this definition also applies to the appurtenance in this case.
*573 The "one vehicle per space" bylaw satisfies the definition of a material alteration or modification. It palpably and perceptively varied the specification of the parking space from its original and existing condition, so as to appreciably affect its function and use. See Sterling Village, 251 So.2d at 687. For 40 years, the Association placed no restrictions on the use of the parking space. The evidence showed that prior to the enactment of the amendment restricting the space, prior owners, McAllister, and McAllister's tenants regularly used the space for more than one vehicle. Therefore, the amendment appreciably affected the space's function and use.
McAllister argues next that the trial court erred in finding the 2000 amendments enforceable, where the facts establish that the Association acted arbitrarily, unreasonably, and selectively in enforcing the 2000 restrictions against him. We disagree.
Although an association may enact reasonable restrictions concerning use, occupancy, and transfer of units that are necessary for the operation and protection of owners, see Lyons v. King, 397 So.2d 964, 967-68 (Fla. 4th DCA 1981), the association cannot arbitrarily, unreasonably, and selectively enforce those restrictions. See Prisco v. Forest Villas Condo. Apartments, Inc., 847 So.2d 1012, 1014-15 (Fla. 4th DCA 2003). Whether a restriction is arbitrarily, unreasonably, or selectively enforced is a factual determination. See Lyons, 397 So.2d at 967.
McAllister contends that the "one vehicle per space" and motorcycle restrictions enacted in 2000 were unreasonably and arbitrarily enforced against him because he is the only unit owner with a parking space large enough to accommodate two vehicles and the only owner with a motorcycle. In light of our conclusion that the "one vehicle per space" restriction was impermissible, we do not address its enforcement. As to the motorcycle restriction, we conclude that there is evidence in the record to support the trial court's finding that it was not arbitrarily, unreasonably or selectively enforced against McAllister. Martin testified that the restriction was enacted because "[m]otorcycles are a nuisance" and people complained because "[t]he motorcycle was parked right in the area where it opens right up on the doors, windows and others."
The Association argues on cross-appeal that the trial court erred in finding that it disparaged title to McAllister's cooperative shares, where there was no proof of malice in the recording of the lien. We agree.
McAllister's disparagement of title claim alleges that the recording of the lien for unpaid special assessments resulted in the Association's denial and discouragement of prospective tenants, which caused the loss of rental income.
In a disparagement action the plaintiff must allege and prove the following elements: (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.
Bothmann v. Harrington, 458 So.2d 1163, 1168 (Fla. 3d DCA 1984); see also Allington Towers Condo. N., Inc. v. Allington Towers N., Inc., 415 So.2d 118, 119 (Fla. 4th DCA 1982). Even if these factors are met, if an affirmative defense of privilege is raised, the burden shifts to the plaintiff *574 to prove actual malice in order to recover. Allington Towers, 415 So.2d at 119 (citing Gates v. Utsey, 177 So.2d 486 (Fla. 1st DCA 1965)). "The affirmative defense of good faith raises a privilege and creates a factual issue as to the existence of malice." Id.
The Association argues that McAllister did not establish the falsehood element because any alleged falsity in the recording of the lien was procedural in nature, and thus, not sufficient to satisfy this factor. The Association relies on Bothmann for this proposition. In Bothmann, the Third District stated: "[A] distinction must be drawn between an improper filing in a procedural sense, and a wrongful filing in a substantive sense. Only the latter will support an action for disparagement of property because only it meets the requisite falsehood element of the action." 458 So.2d at 1168. The Association concedes that a "procedural falsehood" may have been established because of the trial court's order on summary judgment stating that the lien was procedurally defective where the Association, notwithstanding the provisions in the bylaws and section 719.108, Florida Statutes, was premature in moving to foreclose on the lien. However, it claims there was no evidence of a "substantive falsehood."
There is competent substantial evidence in the record from which the trial court could have determined the lien was substantively false. McAllister testified that the lien was based upon unpaid special assessments, a portion of which he did not actually owe because of certain credits due to him. McAllister also testified that the assessment was not properly adopted and therefore, did not provide a valid basis for the lien. Thus, McAllister established the falsehood element.
The second factor, publication, is met by the recording of the lien. This is not in dispute. The third factor, that the Association knows or reasonably should know that the falsehood will likely induce others not to deal with the plaintiff, is established, and also not addressed by the Association. Martin testified at trial that the Association could avoid approving rental of the unit until such expenses were paid, and that the Association had in fact notified and/or turned down several of McAllister's prospective tenants because of the lien.
The fourth factor, that the falsehood in fact plays a material and substantial role in inducing others not to deal with the plaintiff, is also supported by competent substantial evidence. McAllister testified that several of his prospective tenants were not able to rent his units, and therefore induced not to deal with him, because of the lien. John Hutchinson ("Hutchinson"), one of those prospective tenants and a prospective purchaser at one point, testified that he did not rent the unit in part because of the lien, and was dissuaded from purchasing the unit because of the lien. Although the Association notes that there were other reasons Hutchinson did not ultimately rent the unit, such as the parking space issue, the record shows that the lien played a material and substantial part in Hutchinson's decision not to rent the unit. Hutchinson stated: "I did not want to get involved" with this argument [regarding the lien] that was still smoldering" between McAllister and the Association. He also testified:
And the lien on the property was probably the most severe thing that I could be a party to because it had nothing to do with me. I was being asked to assume that lien, or that lien had to be settled prior to me being accepted as the purchaser. So at that point I withdrew my offer.
*575 The fifth and final factor is special damages proximately caused by the Association's publication of the false lien. Although the Association claims McAllister made only conclusory statements about the amount of lost rents, both McAllister and Martin testified as to the reasonable rental value of McAllister's units during the time the lien was in effect, and McAllister testified as to how these amounts were calculated.
McAllister does not dispute that the Association's affirmative defense of privilege rebuts the presumption of malice and requires him to establish that the Association acted with malicious intent in recording the lien. See Allington Towers, 415 So.2d at 119. McAllister argues that the trial court's findings that the Association engaged in a "direct effort to get McAllister," and treated him "as if he had a target on his back that the Board was shooting at," amount to a finding of malice in that the Association recorded the lien to purposefully harm him. We disagree.
The evidence does not support a finding of actual malice in the recording of the lien. The undisputed testimony at trial was that the Association duly noticed a meeting at which the shareholders of record voted for a special assessment for upgraded plumbing and screen enclosures. Although McAllister claimed he did not have to pay the entire amount because of credits that were owed to him, he was the only shareholder who refused to pay his share. The evidence establishes that the Association possessed the authority to lien and needed the funds to complete the improvements. The only evidence that could potentially establish actual malice involves actions taken by the Association against McAllister that were ancillary to the recording of the lien; e.g., requiring potential tenants to meet in the Association's attorney's office, enacting restrictions regarding the parking space, refusing to approve tenants until the lien was paid, etc. These ancillary actions are what the trial court was referring to when it stated that the Association was trying to "get" McAllister.
Accordingly, the trial court erred in finding in favor of McAllister on his disparagement of title claim, absent evidence of malice in recording the lien.
In his answer to the cross-appeal, McAllister states: "The Association does not appeal the trial court's decision that its enforcement of invalid bylaws against McAllister during this time period to interfere with his ability to rent his units is an alternative basis for awarding McAllister damages for lost rents. Therefore, the damage award must be affirmed." We reject this argument, because this "alternative basis" for the damages award was never pled by McAllister. His counterclaim requests damages only for disparagement of title.
Lastly, we decline to reach the Association's argument that "there is no competent and substantial evidence on the record to support the amount of damages awarded to McAllister." Because the Association raised this argument for the first time in its reply brief, it is procedurally barred. See Hall v. State, 823 So.2d 757, 763 (Fla.2002); Fla. R.App. P. 9.120(d).
Affirmed in Part; Reversed in Part.
SHAHOOD, C.J. and DAMOORGIAN, J., concur.
NOTES
[1] Note these cases deal with condominiums, not cooperatives. However, sections 718.103(15), 718.106, and 718.110(4), governing condominiums, essentially mirror the statutory provisions at issue in this case.