DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LENOS TRIGEORGIS,**
Appellant,

v.

**GEORGE TRIGEORGIS,**
Appellee.

No. 4D17-0262

[March 28, 2018]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE 12-019414.

Michael B. Buckley of Buckley Law Group, P.A., St. Petersburg, for appellant.

Peter A. Tappert of Weissman & Dervishi, P.A., Miami, for appellee.

DAMOORGIAN, J.

Lenos Trigeorgis ("Father") appeals the final judgment entered in George Trigeorgis' ("Son") slander of title action. Son cross-appeals the final judgment entered on Father's money lent counterclaim. Because Son failed to establish all of the elements for a slander of title claim, we reverse the slander of title judgment. We also reverse and remand the money lent judgment for recalculation of the prejudgment interest.

At its core, this case involves a bitter dispute between Father and Son regarding repayment of money lent. In late 2009, Father and Son decided to purchase a condo as an investment property. The original plan was for the condo to be purchased in both of their names and for each party to contribute towards the purchase price. Ultimately, however, it was decided that Father would fund the entire purchase price and that the condo would be purchased in Son's name only. This arrangement was contingent on Son agreeing to repay the loan within three years at an 8% annual interest rate. To that end, Father drafted a loan agreement memorializing the above described terms and transferred a total of $231,000 to Son. On April 23, 2010, Son purchased the subject condo for

$185,000. At the time of closing, Son had not yet signed the loan agreement.

After the closing, Father asked Son to sign the written loan agreement and Son assured him that he would. On July 13, 2011, nearly fifteen months after the closing, Son took it upon himself to revise and sign the loan agreement drafted by Father. That agreement, titled "Loan Agreement for Purchase of Symphony Condo Unit 1704-S" ("the Agreement"), provided as follows:

> [Son] hereby agrees to borrow $187,908 from [Father] for the purchase of Unit 1704-S at the Symphony Condominium, 600 West Las Olas Boulevard #1704-S, Fort Lauderdale, FL 33312, using the property as collateral.
>
> The loan is due and payable in 3 years with an accrued 8% annual interest. If the amount due is not paid in 3 years, [Father] will receive ownership of the property. That is, [Father] can obtain the property in lieu of the amount due (principal plus interest) in 3 years.

Shortly after signing the Agreement, Son had a falling out with Father and decided to sell the condo. Upon learning that the condo had been listed for sale, Father filed a notice of interest in real property in the public records claiming to have an interest in the subject condo. Attached to the notice was a copy of the Agreement drafted and signed by Son.

In July of 2012, Son sued Father for slander of title and to quiet title. In his complaint, Son alleged that had Father not filed the notice of interest, he would have been able to sell the condo. Father answered the complaint and raised as an affirmative defense that the Agreement attached to the notice of interest was a true and valid agreement. Father also counterclaimed for money lent, arguing that Son owed him $187,908 plus interest for the money lent to purchase the condo.

The matter proceeded to a bench trial. With regard to Son's slander of title action, Son testified, generally, that as a result of the notice of interest, he was unable to sell the condo. No specific evidence was presented showing how or if the notice of interest induced others not to deal with Son. With regard to Father's money lent counterclaim, Father testified that in total, he lent Son $231,000 for the purchase of the condo. Father later admitted that $70,000 had already been paid back, thus reducing the amount owed to $161,000. Son readily admitted that he owed Father money, however testified that he had already paid back $97,000 and

therefore only owed a remaining $134,000. Son also acknowledged that at the time of closing, the plan was for there to be a formal loan agreement in place similar to the one that he signed in 2011.

At the conclusion of the trial, the court found in favor of Son on his slander of title action and awarded him a total of $64,720.33 in attorney's fees and costs as damages. The court, however, offered no analysis to accompany its finding. The court also found in favor of Father on his money lent claim and awarded him the principal amount of $134,000. The court did not award Father the 8% accrued interest provided for in the Agreement as additional direct damages. The court did, however, award Father the following prejudgment interest:

> [P]re-judgment interest at the statutory rate from April 23, 2010, through October 30, 2011, in the amount of $12,093.54 ($11,587.78 at 6% and $505.76 at 4.75%), and at the rate of 8% from October 31, 2011, through the date of this Final Judgment in the amount of $55,127.49, being in the total amount of interest of $67,221.03.

This appeal follows.

## **Slander of Title**

In a slander of title action, also known as a disparagement of title or property action, the plaintiff must prove the following five elements:

> (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

*McAllister v. Breakers Seville Ass'n*, 981 So. 2d 566, 573 (Fla. 4th DCA 2008) (quoting *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984)). In this case, the evidence did not establish that there was a falsehood or that such falsehood played a material and substantial part in inducing others not to deal with Son.

First, enforceable or not, the Agreement attached to the notice of interest did not constitute a falsehood because the record reflects that

3

Father recorded the notice of interest under the belief that the parties had an enforceable agreement. *See Brown v. Kelly*, 545 So. 2d 518, 520 (Fla. 5th DCA 1989) (holding that a statement in an estoppel letter did not constitute a falsehood for slander of title purposes because the statement "was clearly predicated on the seller's belief, albeit mistaken, that he had a valid and enforceable agreement with the buyer"). Likewise, the fact that Father was owed substantially less money at the time of the trial does not change the fact that the figure listed in the Agreement accurately reflected the amounts lent to Son for the purchase of the condo in 2010. It is worthwhile noting that Father did not file a claim of *lien* in this case but rather a claim of *interest*. *Cf. IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1304 (M.D. Fla. 2013) (finding that the claim of *lien* was substantively false because the amount of the lien was substantially lower than the total claim of lien asserted on the property).

Second, even if the notice of interest was a falsehood, Son did not prove that "in fact, the falsehood [played] a material and substantial part in inducing others not to deal with the plaintiff." *McAllister*, 981 So. 2d at 573 (quoting *Bothmann*, 458 So. 2d at 1168). To satisfy this element, the plaintiff must present specific evidence showing exactly how the falsehood induced others not to deal with the plaintiff. *See, e.g., id.* at 574 (holding that the plaintiff satisfied the material and substantial part element by testifying that several of his prospective tenants were unable to rent his units due to the recording of a lien and by presenting testimony from a tenant who explained that because of the lien, he "did not want to get involved"); *Atkinson v. Fundaro*, 400 So. 2d 1324, 1326 (Fla. 4th DCA 1981) (plaintiffs presented evidence showing that they encountered difficulties in obtaining favorable institutional financing due to the filing of a lis pendens). For example, in *IberiaBank*, the plaintiff sued for slander of title after a claim of lien was filed against its property. 984 F. Supp. 2d at 1303. The plaintiff argued that the claim of lien disparaged its title "because a lien is an encumbrance making the property unmarketable and reducing its value." *Id.* Notwithstanding the unmarketability argument, the court determined that under Florida law the plaintiff failed to establish the material and substantial part element because "there was no evidence presented that there were others who did not deal with [the plaintiff]" or that the plaintiff "had a contract to sell the property or parts of the property [or] attempted to transfer the property." *Id.* at 1305.

In the present case, aside from generally testifying that he was unable to sell the condo, Son presented no specific evidence showing how the notice of interest played a material and substantial part in inducing others not to deal with him. In fact, the trial court acknowledged in one of its post-trial orders that "there was no evidence that [Son] was unable to

complete a sale because of the cloud on his title." In other words, the court clearly found that Son failed to establish that the claim of interest played any part, let alone a material and substantial part, in inducing others not to deal with him. Despite the lack of evidence, and for no apparent reason, the court ruled in favor of Son.

Accordingly, we reverse the court's judgment holding Father liable for slander of title.

## Prejudgment Interest

We next consider the court's prejudgment interest award on Father's money lent claim. In Florida, an award of prejudgment interest "is merely another element of pecuniary damages." *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 214 (Fla. 1985). Accordingly, "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest . . . from the date of that loss." *Id.* at 215. For actions sounding in contract, prejudgment interest is allowed "from the date the debt is due." *Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995).

With respect to the interest rate, section 687.01, Florida Statutes (2016) provides that "[i]n all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03." However, in order for a contract rate to apply in lieu of the statutory rate, the contract must actually provide for a specific post-maturity/default interest rate. *See Olson v. Hirschberg*, 145 So. 2d 303, 305 (Fla. 1st DCA 1962) (holding that the applicable statutory rate applied because "the note contain[ed] no express provision as to the rate of interest after the maturity date"); *see also Celotex Corp. v. Buildex, Inc.*, 476 So. 2d 294, 296 (Fla. 3d DCA 1985).

In the present case, the evidence at trial established that Father lent Son money to purchase the condo on April 23, 2010. The evidence further established that the parties agreed that the loan would be repaid in three years from the date of closing. Accordingly, the date of loss was the date the money was due and not the closing date as found by the court. Therefore, the court should have only awarded prejudgment interest from April 24, 2013 (date of loss) through December 21, 2016 (date the final judgment was entered).

Turning to the applicable interest rate, the court utilized the 8% interest rate provided for in the Agreement rather than the applicable statutory rate. This was error. While the Agreement did provide that "[t]he loan was

due and payable in 3 years with an accrued 8% annual interest," the document is entirely silent as to what interest rate applies after maturity or in the event of default. Accordingly, the 8% interest rate is not applicable to the court's prejudgment interest award. Rather, the statutory interest rate in effect as of the date of loss (April 23, 2013) governs. *See Genser v. Reef Condo. Ass'n,* 100 So. 3d 760, 762 (Fla. 4th DCA 2012). It appears that in applying the 8% interest rate provided for in the Agreement, the trial court was attempting to award Father additional damages for Son's failure to make the interest payments during the life of the loan. While the court could have awarded the accrued interest as additional direct damages, awarding such damages under the guise of prejudgment interest was incorrect.

Based upon the foregoing, we reverse the prejudgment interest award entered in Father's money lent claim and remand for recalculation of the prejudgment interest consistent with this opinion.

*Reversed and remanded.*

TAYLOR and MAY, JJ., concur.

*             *             *

***Not final until disposition of timely filed motion for rehearing.***

6