453 So.2d 414 (1984)
Herman E. SIEGEL, On Behalf of Himself and Other Unit Owners of the Towers of Quayside No. 2 Condominium, Appellant,
v.
DIVISION OF FLORIDA LAND SALES AND CONDOMINIUMS, DEPARTMENT OF BUSINESS REGULATION; and Towers of Quayside Homeowners' Association, Inc., Appellee.
No. 83-2113.
District Court of Appeal of Florida, Third District.
June 19, 1984.
Rehearing Denied July 30, 1984.
Becker, Poliakoff & Streitfeld and Mark B. Schorr, Fort Lauderdale, for appellant.
Rubin, Baum, Levin, Constant, Friedman & Bilzin and Richard L. Allen, Miami, David M. Maloney, Tallahassee, for Department of Business Regulation, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON[*] and FERGUSON, JJ.
FERGUSON, Judge.
Appellant, on behalf of himself and other unit owners of Towers of Quayside No. 2 Condominium, sought a declaration that the unit owners are entitled by law, pursuant to Section 718.301, Florida Statutes (1983),[1] to elect no less than one-third of *415 the members of the board of directors of the Towers of Quayside Homeowners' Association, Inc. on grounds that (1) they own more than fifteen percent of the condominium units, and (2) the Homeowners' Association is an "association," as that term is used in the statute, because it operates condominium property. This appeal is from a declaratory statement issued by the Division of Florida Land Sales and Condominiums, Department of Business Regulation which finds that the Homeowners' Association is not an association subject to the Condominium Act because "it is not the entity responsible for the operation of any condominium property." [e.s.] We disagree and reverse.
The Towers of Quayside is a community consisting exclusively of luxury condominiums. The Towers of Quayside No. 2 Condominium, now completed, is an 18-story complex which consists of 216 units. When all the proposed units are constructed the entire community will consist of 984 units. Each condominium building is governed by a separate condominium association. A Homeowners' Association is also created by independent Articles of Incorporation.
Each building has "common elements" which are operated and maintained by the condominium association. These elements include parking lots, terraces, recreational amenities located on the plaza deck, a swimming pool, balconies, and air conditioning units. The Homeowners' Association operates other "common properties" which include a health spa, marina, restaurant, and tennis courts, all of which it contends are not condominium property. Nonetheless the Homeowners' Association performs certain functions with respect to condominium property. First, Article V(g) of the Declaration of Covenants, Restrictions, and Easements for the Towers of Quayside provides that the Homeowners' Association has the power and duty to:
(g) Install and maintain security devices, detectors and communication facilities, and employ or contract for employment of security services, guards and watchmen for the Common Properties and the Condominium Properties in the Towers of Quayside. [e.s.]
Second, the Homeowners' Association, through the Architectural Committee, has the authority to require architectural conformity throughout the Quayside community. Third, Article IX, Section 1 of the Declaration of Covenants provides:
In the event that any Condominium shall permit any improvement which is the responsibility of such condominium to maintain, to fall into disrepair or not be maintained so as to create a dangerous, unsafe, unsightly or unattractive condition, or to otherwise violate this declaration, the Architectural Committee or the Association [Homeowners' Association] shall have the right, but not the duty, upon fifteen (15) days' prior written notice to the Condominium Association, to correct such condition and to enter upon such Condominium Property to make such repairs or to perform such maintenance, and the cost thereof shall be charged to the Condominium. [e.s.]
The right to access to a condominium unit for the purpose of maintaining or repairing common elements or for making emergency repairs necessary to prevent damage to the common elements or to another unit or units is granted to condominium associations pursuant to Section 718.111(5).
Article 21 of the Declaration of Condominium requires that each unit owner shall become a member of the Homeowners' Association, and shall have a right to enjoy the common properties but that the right to use those properties is non-exclusive. The Declaration of Covenants, which is expressly incorporated into the Declaration of Condominium,[2] assures that each unit owner has

*416 a right and easement of ingress and egress and of enjoyment in, to and over the Common Properties which shall be appurtenant to and shall pass with title to every Dwelling Unit... .
Article I, Section 10 of the Declaration of Covenants, which defines common properties, states that said properties are for the common use and enjoyment of the unit owners. The Declaration of Covenants further provides that each condominium unit owner shall pay an assessment to the Homeowners' Association to cover the costs of operating the common properties.
Appellant is aggrieved by the scheme designed by the developer which he claims prevents the unit owners from exercising their statutory right to elect at least one-third of the board. Voting rights on the board of directors of the Homeowners' Association are heavily weighted in favor of the developer. Article IV of the Declaration of Covenants provides that owners of units subject to assessment (other than the developer) are allowed one vote per unit in the decision-making of the Homeowners' Association.[3] The developer gets six votes for each completed unit, plus six votes per unbuilt but planned unit, based on a total of 984 planned units. The unbuilt units are not subject to assessment. Appellant has determined that more than 148 of the 984 planned units have been sold to unit owners, which amounts to more than 15% of the planned units within the Quayside community. Under Section 718.301(1), the unit owners allegedly are entitled to elect no less than one-third of the members of the board of directors of the Homeowners' Association.
Concededly we are exploring an area where the law is in early stages of development and without clearly defined landmarks. We pose three questions for purposes of the examination: (1) does the Homeowners' Association operate condominium property generally; (2) are the common properties in fact condominium property; and (3) does the Homeowners' Association exist solely for the purpose of serving condominium unit owners. Appellees contend that several factors require a negative answer to each question. First, there is a potential for use of the common properties by other than condominium unit owners;[4] second, the Homeowners' Association lacks primary responsibility for operation of the condominiums; third, the Association's powers derive from Articles of Incorporation and a Declaration of Covenants, *417 separate and apart from the Declaration of Condominium.
Appellant contends that whether any master association is in fact a statutorily controlled condominium association is determined by examining the Homeowners' Association's constituency, relying on the Division's declaratory statements in Number One Condominium Association-Palm Greens at Villa Del Rey, Inc. v. Division of Florida Land Sales and Condominiums, filed June 25, 1980, aff'd mem., Palm Greens Limited v. Division of Florida Land Sales and Condominiums, 402 So.2d 618 (Fla. 1st DCA 1981) and in Hirshorn v. Division of Florida Land Sales and Condominiums, filed October 29, 1981, and further relying on Palm Beach Leisureville Community Association, Inc. v. Raines, 398 So.2d 471 (Fla. 4th DCA 1981), approved, 413 So.2d 30 (Fla. 1982). Since the Association's membership is comprised of only condominium unit owners, and only condominium unit owners have rights in the property administered by the Association, appellant asserts that the only logical answer is that this Association is governed by the Condominium Act.
In Palm Greens the Division held that a master association created pursuant to a Declaration of Condominium, in a community comprised solely of condominiums, for the purpose of coordinating and operating all sub-associations and maintaining recreational lands and facilities, was an association as that term is defined by Section 718.103(2), Florida Statutes (1983). Although the declaration provided for the existence of both sub-associations and a master association, it is significant, argues appellant, that the Division did not restrict the applicability of Chapter 718 to only sub-associations, i.e. individual condominium associations. In Hirshorn, the Division ruled that the individual condominium area associations had the responsibility for safeguarding the rights of the individual unit owners, which responsibility had been delegated to the master association. It found that for that reason the authority of the master association had to be "exercised pursuant to the constraints and requirements of Chapter 718."
The Division counters that although a constituency test may be employed, as it was in Raines, to defeat condominium association status, it does not confer such status. The litmus test, they argue, relying on Sections 718.103[5] and 718.111,[6] is not a constituency test but a function test, i.e., whether the entity operates a condominium or has sufficient powers that constitute condominium operation.[7]
But Raines is distinguishable on its particular facts. The planned community in Raines consisted of 1803 improved lots with single family homes and 502 condominium apartments. Each of the 21 apartment buildings had its own condominium association, while a community (master) association *418 provided maintenance management for the entire community. The issue presented was whether the community association was an "association" within the meaning of Sections 718.103(2) and 718.303(1) so as to be liable for attorney's fees under the latter section. The fourth district held that the community association was not an "association" within the meaning of those statutes. The district court reasoned that since the community association derived its power from its Articles of Incorporation and from the Declarations of Restrictions which governed both the condominium apartments and the single family lots, and the Declarations of Restrictions applicable to the improved lot owners did not subject those lots to a condominium form of ownership, it would be unfair to require the improved lot owners to pay a pro rata share of the attorney's fees assessed under a provision of the condominium statute. Raines, 398 So.2d at 474. The court further held that the only "associations" within the meaning of Section 718.103(2) were the twenty-one individual condominium associations which had the primary responsibility of operating the individual condominium buildings. The supreme court's affirmance pivoted on the fact that the community association served both the single family homes and the condominium buildings, and the single family homes were not subject to condominium ownership. Raines, 413 So.2d at 32.
In the instant case, the Quayside community currently consists of only condominiums. Further, unlike the situation in Raines where the community association did not derive its powers, duties, and responsibilities from the Condominium Act, the Homeowners' Association of Quayside is governed by a Declaration of Covenants which is expressly incorporated into the Declaration of Condominium.
With respect to Palm Greens and Hirshorn, the Division first casts doubt on their continued vitality by noting that they preceded the supreme court decision in Raines. Second, the Division contends that the two declaratory statements do not either support the constituency test put forth by appellant nor detract from the statute's function test. For the same reasons we have just distinguished Raines from this case, we also disagree that Raines has robbed Palm Greens and Hirshorn of vitality. The two cases appear to have been correctly decided by the Division.
The Association's main argument focuses on the functional dissimilarities between the communities of Palm Greens and Quayside as evidence that the court's conclusion in Palm Greens, i.e., that the master association of that community is an association within the meaning of Chapter 718, does not compel the same conclusion here.[8]
The Division arrived at its finding in Palm Greens by considering the following factors: (a) each sub-association (i.e. condominium association) became a member of the master association and elected representatives to it; (b) the master association was "the entity responsible for the coordination and operation of all sub-associations and for the maintenance of areas owned or controlled by said Master Association;" (c) the master association had the power to levy assessments against all member associations in order to defray the expenses of carrying out its functions, which assessments were declared to be common expenses of the condominium; (d) certain areas (common properties) were owned and controlled by the master association "for the use and enjoyment of the members of all Sub-Associations, i.e. condominium unit owners;" (e) the use and enjoyment of such areas were subject to rules and regulations promulgated by the master association, *419 pursuant to Section 718.123(1); and (f) the condominium associations and the master association had entered into long-term leases for recreational facilities, which were for the enjoyment of the unit owners.
Similarly, in the Towers of Quayside Project we find that the Homeowners' Association's (master association's) functions include: (a) maintenance, repair, and management of the common properties; (b) levy and collection of assessments against each condominium unit owner to cover the costs of operating the common properties; (c) management of the common properties "for the common use and enjoyment of the [unit] owners;" and (d) establishment of uniform rules and regulations pertaining to the use of the common properties. Additionally, although most of the functions of the Homeowners' Association pertain to common properties, they do encompass some maintenance and control of condominium property in at least three areas, as previously discussed. The fact that the master association in Palm Greens is composed of condominium associations while the Homeowners' Association in Quayside is composed of the unit owners themselves is, insignificantly, a difference of form, since the common properties of Palm Greens also existed expressly "for the use and enjoyment of the members of all Sub-Associations, i.e. condominium unit owners." [e.s.] Declaratory Statement in Palm Greens, at 3.
Lastly, the Division and the Association argue that the common properties were not submitted to condominium ownership. On this point the broader question presented is whether the so-called common properties are actually condominium property, or more precisely whether the irrevocable rights and obligations of unit owners which flow from the Declaration of Condominium, to use and pay for the common properties, amount to condominium rights.
On this point we look first to the statute. Section 718.103(11) defines as condominium property:
... lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium.
Article 2.9 of the Declaration of Condominium contains the same language in its definition of condominium property:
[T]he land and personal property that are subject to condominium ownership under this Declaration, all improvements on the Land, and all easements and rights appurtenant thereto which are intended for use in connection with the Condominium.
The Declaration of Condominium provides further in its submission statement:
The Developer hereby submits the Land and Building (each as hereinafter defined), all other improvements erected thereon, and all other property, real, personal or mixed, intended for use in connection therewith (collectively called the "Property") to condominium ownership pursuant to the Condominium Act of the State of Florida and, pursuant thereto, does hereby create a condominium to be known as The Towers of Quayside No. 2 Condominium (the "Condominium"). [e.s.]
The Declaration of Covenants in Article II, Section 1 states that:
Every owner shall have a right and easement of ingress and egress and of enjoyment in, to and over the Common Properties which shall be appurtenant to and shall pass with title to every Dwelling Unit.... [e.s.]
A thing is "appurtenant" to something else when it is necessarily connected with its use and enjoyment, and is appurtenant to land when it is by right used with the land for its benefit. Black's Law Dictionary 94 (5th ed. 1979); see also Tower House Condominium, Inc. v. Millman, 410 So.2d 926 (Fla. 3d DCA 1981).
The submission statement submits to condominium form of ownership the land, improvements and "all other property ... intended for use in connection therewith," *420 without qualification, which quite reasonably includes the common properties.
The Division's holding that "since the Towers of Quayside Homeowners' Association, Inc. is not the entity responsible for the operation of any condominium property, it is not an association within the meaning of the Condominium Act and specifically Section 718.301, Florida Statutes" is not supportable in fact or law. To the contrary, the evidence shows that the Homeowners' Association does, to a meaningful extent, operate condominium property. Based on interpretations of the applicable statutes, and the documents which the developer is required to file before offering to sell condominium units, it is clear that the common properties were submitted to condominium ownership. Applying, appropriately, both the constituency test advanced by appellant, and the function test embraced by appellees, we conclude that the Homeowners' Association is a condominium "association" within the meaning of Section 718.103(2), subject to ultimate control by unit owners in accordance with Section 718.301.
Reversed.
NOTES
[*] Judge Pearson did not hear oral argument.
[1] Section 718.301(1) provides in pertinent part:

When unit owners other than the developer own 15 percent or more of the units in a condominium that will be operated ultimately by an association, the unit owners other than the developer shall be entitled to elect no less than one-third of the members of the board of administration of the association.
[2] Article 21 of the Declaration of Condominium provides:

All rights, privileges, benefits, liabilities and obligations set forth in said Declaration of Covenants, Restrictions and Easements are incorporated herein by reference and each Unit Owner shall be bound thereby in all respects.
[3] A suggestion was made at oral argument that any profits made on operations of the common properties do not inure to the benefit of unit owners or the condominium association but exclusively to the Homeowners' Association.

On this point, Article 25 of the Declaration of Condominium, is worthy of note. It provides:
Conflict of Interests. No representative of the Developer serving on the Board of Directors of the Association shall be required to disqualify himself from voting upon any management contract, lease, or other matter between the Developer and a Management Company or the Association and a Management Company, where the Developer has a pecuniary interest in the Management Company. Developer, as a Unit Owner, shall not be required to disqualify itself from voting in any matter which may come before the membership of the Association in regard to a management contract, lease, or other matter where Developer may have a pecuniary or other interest, nor shall any conflict of interest be a cause of partial or total invalidity of the matter voted upon, whether or not such vote was necessary for the adoption, ratification or execution of the same.
The potential therefore exists for the developer, as controller of the Homeowners' Association, to contract with itself to manage the common properties on any term which meets its approval.
[4] The Homeowners' Association's argument that there is a potential for use of the common properties by other than condominium unit owners is based on Article I, Section 14 of the Declaration of Covenants which provides that a dwelling unit includes, without limitation, a condominium unit. Based on this definition, the Homeowners' Association asserts that although the developer has proposed to build condominiums on the two remaining undeveloped sites, other non-condominium development would be possible. We reject this argument since we are dealing only with the present form of residential development which is limited to condominium units.
[5] Section 718.103(2), (9), and (11) contain the following pertinent definitions:

(2) "Association" means the corporate entity responsible for the operation of a condominium.
(9) "Condominium" means that form of ownership of real property which is created pursuant to the provisions of this chapter and which is comprised of units that may be owned by one or more persons, and there is, appurtenant to each unit, an undivided share in common elements.
(11) "Condominium property" means the lands, leaseholds, and personal property that are subjected to condominium ownership, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium.
[6] Section 718.111, which defines the powers and duties of a condominium association, states in pertinent part:

(1) The operation of the condominium shall be by the association, which must be a corporation for profit or a corporation not for profit... . An association may operate more than one condominium.
(2) The association may contract, sue, or be sued with respect to the exercise or nonexercise of its powers. For these purposes, the powers of the association include, but are not limited to, the maintenance, management, and operation of the condominium property.
[7] Operation of a condominium is defined without limitation in Section 718.103(15) as "the administration and management of the condominium property." [e.s.]
[8] The Homeowners' Association adopts the Division's contention that the constituency test can defeat but not confer condominium association status, then extends the argument by suggesting that the fact that planned but unconstructed units could be rented rather than sold as condominium units is sufficient to defeat condominium status. That argument is not persuasive because all that is reflected by the record before us is a planned condominium community which is partially complete.