# THE FALLS OF INVERRARY CONDOMINIUMS, INC. v STEIN

## Case No. 84-18581 DA

Seventeenth Judicial Circuit, Broward County

July 16, 1985

### APPEARANCES OF COUNSEL

**Becker, Polakoff & Streitfeld, P.A.,** for plaintiff.
**Genet & Milner** for defendant.

### OPINION OF THE COURT

ROBERT C. SCOTT, Circuit Judge.

### *SUMMARY FINAL JUDGMENT*

THIS CAUSE came on to be heard upon defendant's Motion for Summary Judgment.

In August, 1984, plaintiff, a condominium association, brought an action to foreclose a lien of $865.00 assessed against a condominium apartment owned by the defendant.

Defendant filed a general denial in which he specifically denied that the $865.00 assessment was proper, defendant also counterclaimed against plaintiff for slander of title, for declaratory relief and for injunctive relief to enjoin the use of maintenance fees to maintain a certain parcel of land known as Circle Property or to pay taxes on said property or any expenses connected therewith.

A recitation of the scenario which gave rise to this litigation follows:

In 1976, the plaintiff in this action brought a class action against the developer of the subject condominium, for defects in construction. The defendant in this action and 20 other unit owners excluded themselves from the class.[1]

Ultimately, the suit against the developer was resolved in an unusual fashion. The plaintiff condominium association purchased a parcel of land contiguous to the subject condominium for a purchase price of 4495,000. Contemporaneously with the settlement, the court approved the settlement and recognized the exclusion of the 21 owners, one of which was the defendant in this action.[2]

This foreclosure action ensued when plaintiff sought to foreclose on 4850.00 assessment lien against defendant. Said 4850.00 represented $1/750$ of the cost of purchasing the Circle Property, plus $1/750$ of the costs and attorneys fees.

Plaintiff, from the outset, was faced with an impossible burden—to foreclose a lien against the unit of the owner who had opted out of the class action (supra). While plaintiff pressed its claim with ingenuity and dogged determination, its efforts were for naught. The court is aware of the necessity for plaintiff to prevail in this action in order to avoid a catastrophic glitch at the Falls of Inverrary which would leave 98% of its owners frustrated by 2%. The court is painfully aware of *Tower House Condominium, Inc. v. Millman*, 410 So. 2d 926 (Fla. 3d DCA 1981); as matters stand, *Tower House* is the law.

Defendant's position throughout this litigation has been most interesting. While no testimony was taken at any hearing, Dr. Stein,

---

[1] It is noteworthy that the 21 owners who excluded themselves constituted less than 3% of the unit owners.

[2] See the *Falls of Inverrary Condominiums, Inc. v. Haft-Gaines Company*, 76-16721, in the Circuit Court of Broward County, Florida.

himself, appeared at each of the more than 25 non-evidentiary hearings —despite the fact that he was represented by able counsel.

The court opines that the main reason for the defendant's assiduous defense was not his fight over $850.00; but his recognition, av initio, that having excluded himself from the class action, (See footnote #2) he was insulated from the association's demand for his pro rata share of the purchase price and costs of the land acquisition.

Voila! He has the association in a head lock!

Thereupon the defendant solemnly counterclaimed for:

(a) slander of title

(b) declaratory relief

(c) an injunction

This case points out, the havoc wrought by incendiary condominium litigation fanned by such unfortunate provisions as Fla. Statute 718.110(4)[3] However the court recognizes the correctness of defendant's *legal* position but views with considerable askance his *equitable* position.

As noted by the defendant in his brief in support of his Motion for Summary Judgment, the court, in the prior action (See footnote #2) expressly found that the stipulation which approved the land acquisition by the assocation was in the best interest of the class. However, sauce for the assocation of some 730 unit owners was not sauce for the 2-plus% of the unit owners who opted out of that action.

Defendant's frustration of plaintiff's efforts to consider the Circle Property as a common element demonstrates the reefs and shoals upon which a condominium can be precipitously cast.

Certainly single family residences will never become passe!

In any event, it is

ADJUDGED that defendant's Motion for Summary Judgment (docket entry #75) be and the same hereby is granted.

Defendant's counterclaim is hereby decreed to be moot.

The court reserves jurisdiction re the matter of attorney's costs due to defendant.

ORDERED at Fort Lauderdale, Florida, on the 16th day of July, 1985.

---

[3] Fla. Statute 718.110(4) provides that the common elements cannot be materially changed without the approval of 100% of the unit owners. It is suggested that 100% of 750 people would not agree that the sun sets in the West.