In re BAYSHORE YACHT & TENNIS
CLUB CONDOMINIUM ASSOCI-
ATION, INC., Debtor.

No. 05–12454–BKCRAM.

United States Bankruptcy Court,
S.D. Florida.

Jan. 12, 2006.

 

James B. Miller, Esq., Miami, FL, Ronald J. Isriel, Esq., Isriel & Associates, P.A., Miami, FL, for Al Coletta.

Thomas L. Abrams, Esq., Gamber & Adams, Ft. Lauderdale, FL, Marc Auerbacher, Esq., Katz Barron, Miami, FL, for Debtor.

## ORDER GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT; DENYING COLETTA'S CROSS MOTION FOR SUMMARY JUDGMENT AND DISALLOWING CLAIM # 20

ROBERT A. MARK, Chief Judge.

The Court conducted a hearing on December 21, 2005, on cross motions for summary judgment on Debtor Bayshore Yacht & Tennis Club Condominium Association's ("Bayshore" or "Debtor") objection to Proof of Claim # 20 filed by Creditor Al Coletta ("Coletta"). Specifically, on November 15, 2005, Debtor filed its Motion for Final Summary Judgment as to Proof of Claim # 20 ("Motion for Summary Judgment")(CP # 151). On November 22, 2005, Coletta filed his Response and Cross Motion for Summary Judgment ("Response and Cross Motion")(CP # 174). Debtor subsequently filed its Reply to Al Coletta's Response in Opposition to Bayshore's Motion for Summary Judgment on Claim # 20 and Response to Coletta's Cross Motion for Summary Judgment ("Reply")(CP # 216). Upon reviewing the record, including the legal memoranda, and after considering the arguments of counsel and relevant case law, the Court finds it appropriate to grant Debtor's Motion for Summary Judgment and deny Coletta's Cross Motion. As such, Coletta Claim # 20 is disallowed.

### Factual and Procedural Background

Although the history between the parties is tortured, and certain facts are in

dispute, the relevant facts necessary to address this claim are undisputed. Bayshore Yacht & Tennis Club is a condominium building located in North Bay Village, Florida. The Debtor was created pursuant to a Declaration of Condominium, attached as Exhibit "1" to the Response and Cross Motion. The Declaration of Condominium was recorded on June 16, 1978. In 1981, Coletta purchased three units ("Penthouse Units") at the Debtor's premises.[1] The Penthouse Units were located on the eleventh floor of the building.[2] At the time of purchase, elevator service within the building ceased at the tenth floor. Access to the Penthouse Units was, and still is, by way of a stairway from the tenth floor. It is undisputed that at the time of purchase, Coletta knew that the elevator did not go up to the Penthouse Units.

Upon purchasing the Penthouse Units, Coletta attempted to convince the Debtor to provide elevator access to the eleventh floor. According to Coletta, on numerous occasions the Debtor committed to providing elevator access to the eleventh floor at no expense to Coletta. Deposition of Al Coletta at 18, 21, attached as Exhibit "6" to the Response and Cross Motion. However, no action was ever taken on this alleged commitment, purportedly because Bayshore lacked sufficient funds. Dep. Coletta at 17; Affidavit of Patrick Bilodeau ¶ 3, attached as Exhibit "9" to the Response and Cross Motion. Conversely, Debtor maintains that it never promised to

pay for any elevator extension. Board Meeting Minutes of July 5, 2002, attached as Exhibit "3" to the Response and Cross Motion. As discussed below, this factual dispute over what Bayshore's board promised Coletta is not a factual issue precluding entry of summary judgment.

Over the years, the relationship between the parties deteriorated.[3] In connection with his dissatisfaction with the Debtor and members of its board of directors, Coletta, on February 15, 2001, filed a lawsuit in the Circuit Court of Florida against Bayshore, styled as *Al Coletta v. Bayshore Yacht & Tennis Club Condominium Association, Inc., et al.*, Case No.: 01–03879CA(01)("State Court Case"). In his Third Amended Complaint, Coletta sought injunctive and declaratory relief (Counts I and III respectively) and damages (Count II) against the Debtor in connection with its alleged failure to provide elevator access to the Penthouse Units. In support of these claims, Coletta alleged that (1) Debtor and members of its board promised to provide elevator access to the Penthouse Units at no charge to Coletta; (2) to provide such elevator access would not require material alterations to the common elements; (3) such alterations were required pursuant to the Declaration of Condominium, the Americans with Disabilities Act ("ADA") and the Florida Americans with Disabilities Act ("FADA") and (4) because the Debtor had not provided such elevator access, Coletta suffered damages.

1. The three units are specifically identified as RU–1101, RU–1102 and RU–1103 within the Debtor's Declaration of Condominium, attached as Exhibit "1" to the Response and Cross Motion. Coletta also purchased several "commercial units" as that term is used in the Declaration of Condominium at Bayshore.

2. Coletta's papers sometimes refer to the Penthouse Units as being located on the twelfth floor. To avoid any confusion as to numbering, all references to floors within the

Debtor's property will coincide with the schematic layout found in the Declaration of Condominium. In this schematic, the Penthouse Units are located on the eleventh floor.

3. Although an amusing read with possible late-night cable movie potential, the Affidavit of Horace Anthony Fonseca, attached as Exhibit "8" to the Response and Cross Motion for Summary Judgment, has little relevance to this matter.

On April 4, 2005, Bayshore filed its Chapter 11 petition. Amongst other claims, Coletta timely filed his Proof of Claim # 20 which referenced the State Court Case. Coletta subsequently sought stay relief, seeking to continue the State Court Case rather than litigating Claim # 20 in this Court. The requested relief was denied by Order dated October 31, 2005, and instead, this Court ruled that Claim # 20 would be resolved in connection with other contested matters arising from the Debtor's objections to Coletta's various proofs of claim.

While the bankruptcy was ongoing, the Debtor informed unit owners that it needed to raise $1,500,000 through a special assessment. Part of this assessment included $250,000 to modernize and replace the elevator system within the building. Board Letter to Unit Owners, attached as Exhibit "5" to the Response and Cross Motion. The proposed elevator project subject of the assessment does not include extending elevator service to the Penthouse Units.

### Summary of the Arguments

Debtor's primary arguments are (1) Bayshore has no contractual obligation to extend the elevator at its expense; (2) extending the elevator is not a maintenance obligation; (3) extending the elevator is a material alteration requiring seventy-five percent approval from the unit owners; and (4) even if the alteration is not material and board approval is sufficient, the Declaration of Condominium requires Coletta to pay for the improvement.

Coletta argues that (1) extension of the elevator is a maintenance obligation; (2) if it is an alteration, it is not a material alteration and therefore, board approval is sufficient; and (3) he is not obligated to pay for the improvement because Bayshore agreed to pay and since, under the relevant section of the Declaration of Condominium, the Penthouse Units would not be the substantially exclusive beneficiary if the elevator was extended.

After a review of the legal memoranda and the exhibits attached thereto, the Court finds that there is no genuine issue of material fact that is in dispute. Extension of the elevator service would not constitute maintenance of the common elements. Moreover, pursuant to the Declaration of Condominium, Bayshore is not obligated to pay for any extension of the elevator. Thus, Coletta is not entitled to any relief on his claim.

### Discussion

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence. The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like, *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir.2003), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### I. Extending elevator access to the eleventh floor does not constitute maintenance of the common elements

█ Pursuant to Florida Statute § 718.111, a Florida condominium association has a statutory duty to "maintain the common elements."[4] Based on this duty to maintain the common elements, the underpinning of Coletta's prayer for damages and equitable relief is that extension of the elevator to the eleventh floor constitutes such maintenance.[5] In support of his posi-

---

**4.** Florida Statute § 718.111 provides that "[t]he association may contract, sue, or be sued with respect to the exercise or nonexercise of its powers. For these purposes, the powers of the association include, but are not limited to, the maintenance, management, and operation of the condominium property." F.S.A. § 718.111(3)(2006).

**5.** Coletta's claim for damages, as presented in the Third Amended Complaint, alleges that the Debtor and its board of directors, by refusing to extend the elevators to the eleventh

floor, "breached its duty to manage the affairs of the condominium." Such breach resulted in "lost profits and loss of value" to the Penthouse Unit. The claim for equitable relief, specifically, extension of the elevator to the eleventh floor at the Debtor's expense, also flows from the Debtor's alleged failure to manage the affairs of the condominium. However, as Coletta's counsel conceded at oral argument, if the extension of the elevator to the eleventh floor is not considered maintenance, then Coletta's claim for damages would fail.

tion that extension of the elevator should be considered maintenance and not an alteration, Coletta presents an offer from a contractor to extend the elevator ("Centrellx Offer"), attached as Exhibit "10" to the Response and Cross Motion. The Centrellx Offer lists in detail the tasks needed to be performed to extend the elevator. Specifically, extension of the elevator requires the Debtor to (1) build a shaft and motor room in accordance with ADA and state code requirements; (2) install concrete structure pockets for new elevator machine beams; (3) move various components of the elevator system into a new machine room; (4) install a door to the machine room that must be fire rated, self-closing and self-locking; (5) and provide an overhead steel beam in the new machine room so that Centrellx may raise the machine and motor up one floor. The total cost of the Centrellx Offer is $41,900. Based on this detail, Coletta argues that extension of the elevator would constitute maintenance of the common elements.

As previously noted, the Debtor has a statutory duty to maintain the common elements. The Debtor's Declaration of Condominium reaffirms this obligation, stating:

> Section XXI Maintenance and Repair of Common Elements by Association: [Bayshore], at its expense, shall be responsible for the maintenance, repair and replacement of all of the COMMON ELEMENTS . . . .

■ The duty to maintain the common elements also includes making changes and modifications as to protect the common elements. *Tiffany Plaza Cond. Ass'n, Inc. v. Spencer,* 416 So.2d 823 (Fla. 2d DCA 1982); *Ralph v. Envoy Point Condo. Ass'n,* 455 So.2d 454 (Fla. 2d DCA 1984).

■ Based on a review of the Centrellx Offer, the Court finds that as a matter of law, extension of the elevator to the elev-enth floor does not constitute maintenance of the common elements. Although used in the Declaration of Condominium, the term "maintenance" is not defined. Looking to common meaning, "maintenance," is the "upkeep or preservation of condition of property." *Black's Law Dictionary* (6th ed.1990).

Nothing in the Centrellx Offer indicates that extension of the elevator to the eleventh floor effectuates an "upkeep or preservation" of the common elements. Certainly, extending the elevator to the eleventh floor is not necessary to maintain and preserve the existing elevator service through the tenth floor. Quite to the contrary, as detailed above, the Centrellx Offer requires Bayshore to spend $41,000 to build, install and move various components of the elevator system in order to extend it to the eleventh floor. Even Coletta characterizes the various steps to extend the elevator as "modifications" in his Third Amended Complaint. Clearly, extending the elevator to the eleventh floor is not maintenance of the existing common elements.

Neither party cited case law directly on point in analyzing the maintenance versus alteration issue but one case reviewed by the Court provides some guidance, *Ralph v. Envoy Point Condominium Association,* cited earlier. In *Ralph,* the board of directors of the association approved a special assessment to extend the seawall on the premises to protect the common elements. The issue in *Ralph* was whether the board of directors needed unit owner approval of the change to the seawall, or rather, could make such change without approval on the basis that it was maintaining the common elements. Looking at the evidence, the court concluded that a sufficient basis existed for the trial court's finding that the raising of the seawall constituted maintenance of the common ele-

ments and therefore, did not require a unit owner vote. Here, unlike *Ralph*, failure to extend the elevator to the eleventh floor will not jeopardize the existing common elements on the Debtor's premises. The only effect of extending the elevator to the eleventh floor is to provide convenience to Coletta in his private or potentially, commercial use, of the Penthouse Units.

## II. The ADA and FADA, even if applicable, do not make extending the elevator a maintenance obligation

■ Although he cites no law, Coletta alleges that the duty to maintain the common elements also requires that such maintenance be done in accordance with applicable laws. As such, when the Debtor attempts to modernize and replace the current elevator system, a task that the Debtor concedes is "maintenance," it must also comply with the ADA and FADA.[6] Under the ADA and FADA, Coletta argues that various provisions require elevator access to the eleventh floor. Coletta's argument is unavailing.

> Section 12183 of the ADA, in full, states: (a) [a]s applied to public accommodations and commercial facilities, discrimination for purposes of section 12182(a) of this title includes-
> (1) a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by indi-

viduals with disabilities... and (2) with respect to a facility or part thereof that is *altered* by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make *alterations* in such a manner that, to the maximum extent feasible, the *altered* portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

42 U.S.C. § 12183 (2006)(emphasis added). Regardless of whether the ADA applies at all in this matter,[7] a plain reading highlights that it specifically pertains to alterations and not maintenance. Thus, assuming that Coletta's position is correct, that is, that the elevator modernization program somehow triggers ADA compliance on the part of the Debtor, it must follow that the modernization program is then an alteration, and not maintenance as the Debtor has characterized it.

As for FADA, the Notice of Violation issued to the Debtor does not state that the association has failed to properly maintain the common elements of the building, specifically, the elevator. It does not state that the elevator is in some manner faulty or defective. Rather, the Notice merely cites the Debtor for failing to extend the elevators up to the top floor of the building. In fact, assuming that the Notice of Violation was appropriately issued,[8] the

---

6. As for FADA, Coletta points to a Notice of Violation issued to the Debtor on January 25, 2001, attached as Exhibit "7" to the Response and Cross Motion. The Notice of Violation states that Bayshore is in violation of Florida Accessibility Code 4.10.1, which provides that elevator access must be "to all floors inclusive of the top floor of the building."

7. Although it appears that the ADA and FADA are not applicable, the Court will not address whether Debtor is a "public accommodation"

or "commercial facility" as those terms are defined in the ADA, and more importantly, whether Coletta has standing to assert Debtor compliance under either statute.

8. The evidentiary value of this Notice of Violation is at best minimal based on the fact that there is nothing in the record indicating any further governmental action on the Notice of Violation since the time it was entered almost five years ago.

only action that could be taken by Debtor to comply would be to alter the elevators rather than maintain them as is. Accordingly, Debtor is entitled to summary judgment on Coletta's maintenance claim. Extension of the elevator does not fall within the Debtor's duty to maintain the common elements. It follows then that Coletta's claim for damages under Florida Statute § 718.111 fails as a matter of law.

### III. Coletta's claim fails since Coletta, not Bayshore, must pay for an alteration which extends elevator service to the Penthouse Units

■ In its Motion for Summary Judgment, Bayshore argues that any alteration to the elevators requires a vote of the unit owners in the building. In support of this argument, the Debtor points to the Declaration of Condominium, a document binding on all unit owners. *See Neuman v. Grandview at Emerald Hills, Inc.,* 861 So.2d 494 (Fla. 4th DCA 2003). Relevant portions of the Declaration of Condominium state the following: [9]

> *Section XVIII Limitation Upon Right of Owners to Alter and Modify Units:* No owner of any UNIT shall make or permit to be made any structural modifications or alterations in such UNIT which would materially affect or in any manner endanger the CONDOMINIUM in part or its entirety, or which would materially affect or interfere with the provision of utility services constituting COMMON ELEMENTS located therein

without first obtaining the written consent of the [Debtor].

> *Section XIX Right of Association to Alter and Improve Property and Assessment THEREFOR:* [Bayshore] shall have the right to make or cause to be made such alterations or improvements to the COMMON ELEMENTS as do not prejudice the rights of the owner of any UNIT, provided the making of such alterations and improvements are approved by the Board of Directors of [Bayshore], and the cost of such alterations or improvements shall be ... assessed and collected from all of the owners of UNITS. However, where any alterations and improvements are exclusively or substantially exclusively for the benefit of the owner or owners of a UNIT or UNITS requesting the same, then the cost of such alterations and improvements shall be assessed against and collected solely from the owner or owners of the UNIT or UNITS exclusively or substantially exclusively benefitted ....

Debtor argues that because the Declaration of Condominium is silent in regard to approval of material alterations to the common elements, Florida Statute § 718.113(2)(a) establishes a default rule: [t]here shall be no material alteration or substantial additions to common elements or real property, except in a manner provided in the declaration. If the declaration does not specify the procedure for approval of material alterations or substantial additions, 75 percent of the total voting interests of the associa-

---

9. The Declaration of Condominium provisions cited by Coletta in his Response and Cross Motion provide no guidance. Furthermore, Coletta's counsel cites "Section XIV Use of Common Elements Subject to Rules of Association" for the proposition that "Commercial UNITS shall be permitted to use such portions of the COMMON ELEMENTS as may be reasonable and appropriate." Unfortunately, Coletta's counsel failed to read the entire sentence. In full, it reads "[o]wners and lessees of Commercial UNITS shall be permitted to use such portion of the COMMON ELEMENTS as may be reasonable and appropriate *for the advertising of the business* being conducted on said Commercial UNITS."

tion must approve the alterations or additions.

F.S.A. § 718.113(2)(a)(2006).

Based on these provisions, Debtor maintains that the elevator is a common element and that the change proposed by Coletta would constitute a material alteration as that term is used in Florida Statute § 718.113(2)(a) and defined under Florida case law. Accordingly, a unit owner vote would be required. Because it is undisputed that the unit owners have not voted to approve the elevator extension, Bayshore argues that it cannot be obligated to make the alteration. Coletta argues that any change to the elevator would not constitute a material alteration, and thus, no unit owner vote would be required, only approval by Bayshore's board.

■ The Court is not determining whether extending the elevator would be an alteration requiring only board approval or a material alteration requiring a vote. Under the case law reviewed by the Court, this issue is subject to bona fide dispute. *See, e.g., Sterling Vill. Condo., Inc. v. Breitenbach*, 251 So.2d 685, 687 (Fla. 4th DCA 1971)(holding that replacement of screen enclosures with glass jalousies constituted a material alteration); *Tower House Condo., Inc. v. Millman*, 410 So.2d 926 (Fla. 3d DCA 1981)(finding that acquisition of land to extend parking area constituted material alteration requiring unit owner approval); *Islandia Condo. Ass'n, Inc. v. Vermut*, 501 So.2d 741 (Fla. 4th DCA 1987)(change of color scheme of complex found to be material alteration). Resolving this issue is not necessary here because under either scenario, Coletta's claim fails. If the extension is a material alteration, Coletta's claim fails since it is without dispute that the improvement was not approved by a vote under Florida Statute § 718.113(2)(a). If the extension is an alteration requiring only board approval,

Coletta still loses because, as discussed below, the applicable section of the Declaration of Condominium would require Coletta, not Bayshore, to pay for the alteration.

■ "The declaration of condominium, which is the condominium's 'constitution,' creates the condominium and 'strictly governs the relationships among the condominium units owners and the condominium association.' " *Neuman*, 861 So.2d at 496–97 (quoting *Woodside Vill. Condo. Ass'n v. Jahren*, 806 So.2d 452, 456 (Fla.2002)). Here, there is no dispute that the Declaration of Condominium governs the relationship between Coletta and Bayshore. With this in mind, Section XIX of the Declaration of Condominium clearly states:

> [w]here any alterations and improvements are exclusively or substantially exclusively for the benefit of the owner or owners of a UNIT or UNITS requesting the same, then the cost of such alterations and improvements shall be assessed against and collected solely from the owner or owners of the UNIT or UNITS exclusively or substantially exclusively benefitted . . . .

Although Coletta argues that he is not the exclusive or substantially exclusive beneficiary, it is hard for this Court to imagine a situation where this section would ever apply more aptly than here. Simply, extension of the elevator to the eleventh floor will not benefit those unit owners who reside on lower floors. Rather, it only benefits those units which are not receiving elevator service to the eleventh floor, in this case, the Penthouse Units. Thus, if Coletta, as the owner of the Penthouse Units, requests extension of the elevator to the eleventh floor, and it is determined that such extension falls within the ambit of Section XIX, he is obliged to pay on the basis that he is "exclusively or substantially exclusively benefitted" from

this alteration. Coletta's belief that he is not the exclusive beneficiary of this alteration because he does not reside in the Penthouse Units, nor intends to, is misplaced. This provision only requires that the alteration be "for the benefit of the owner or owners of a UNIT or UNITS," and not as Coletta posits, residents of those units.

### IV. Coletta's contract argument also fails

Finally, Coletta argues that even if Section XIX of the Declaration of Condominium would obligate him to pay, that section does not control because the Debtor orally promised to pay for the extension. This contract argument fails for several reasons.

First, Coletta's deposition testimony, the affidavit of Patrick Bilodeau and the allegations in the State Court Case all refer, without specifics, to alleged oral promises made no later than in 1998 or 1999. The Court finds that these general allegations of oral promises cannot support a contract claim, particularly since the only written statement of Bayshore's position is that Coletta could extend the elevator at his own expense. *See* Board Meeting Minutes of July 5, 2002 ("The Board has no objection to Coletta taking the elevators to the [Penthouse Units] at his own costs."). This written statement of the board's position was made well after the time that Coletta argues that the Debtor promised to pay for any extension.

Second, even if these vague oral promise allegations created a factual issue over Bayshore's commitment to pay, any alleged contract would fail for lack of consideration. A central tenet of contract law is that for a contract to be enforceable, there must be consideration. "A mere gratuitous promise of a future gift, lacking consideration, is unenforceable." *Kaufman v. Harder*, 354 So.2d 109, 109 (Fla. 3d DCA 1978). Even assuming *arguendo* that the Debtor and its representatives did orally promise to provide elevator access to the eleventh floor at the Debtor's expense and Coletta subsequently accepted such a promise, Coletta cannot point to any consideration that he provided to induce a promise obligating Bayshore to pay for an alteration Coletta would otherwise have to pay for himself, nor is there any evidence that he detrimentally relied on such a promise.

Coletta's deposition is devoid of any statements that would support an argument that Debtor made an enforceable promise to Coletta. Nowhere did Coletta state that he provided any consideration to the Debtor.[10] Coletta states that one point he loaned $300,000 to the Debtor in return, for among other things, elevator access to the Penthouse Units. After commencing litigation based on this loan, Coletta reached settlement and the Debtor agreed to repay him on this loan. Dep. Coletta at 8–9. The settlement made no mention of any alleged obligation to extend the eleva-

10. At oral argument Coletta's counsel asked for further discovery to find out what consideration his client provided to the Debtor in exchange for the promise to provide elevator access. Aside from it being highly unusual to need discovery from other parties to find out what your own client said or did, Coletta's counsel was fully aware that the hearing on the Motion for Summary Judgment was going forward on December 21, 2005. Moreover, Coletta knew, as stated in his own Response and Cross Motion, that as the non-moving party, he "may not rest upon the mere allegations or denials ... but ... must set forth specific facts showing that there is a genuine issue for trial." Response and Cross Motion p. 6. Debtor raised the issue of consideration in its Motion for Summary Judgment and Coletta failed to meet his burden of establishing a genuine issue of fact over the existence of consideration to support the alleged contract.

tors. Statements made by Patrick Bilodeau, further emphasize that any promise to provide elevator access, if at all, to the eleventh floor was solely at the discretion of the Debtor. Bilodeau Aff. ¶ 3. Nor does Coletta's deposition testimony provide any evidence that Coletta detrimentally changed his position on the basis of a promise to provide elevator access.[11] Simply, the record reflects that Coletta asked, the Debtor allegedly promised and nothing happened over a span of twenty years. In sum, there is no genuine issue of material fact and Bayshore is entitled to judgment as a matter of law on Coletta's alternative theory that Bayshore is contractually obligated to extend the elevator at its expense.[12]

### Conclusion

At first blush, it would appear that a condominium owner's demand for elevator service would be reasonable and supportable under the law since condominium elevators typically service all floors. In this case, however, the claim has no legal or equitable merit. Coletta bought the Penthouse Units knowing that they were not serviced by the elevators. Moreover, he bought the Penthouse Units subject to the condominium documents which clearly obligate him to pay for an extension of the elevator if an extension is authorized by Bayshore. Thus, Coletta's Claim # 20, which seeks damages, injunctive and declaratory relief fails in its entirety. Bayshore has no legal obligation to extend the elevator service to Coletta's Penthouse Units at its own expense. For the foregoing reasons, it is-

**ORDERED** as follows:

1. Bayshore's Motion for Summary Judgment is granted.

2 Coletta's Cross Motion is denied.

3. Claim # 20 is disallowed.

---

**11.** In his Response and Cross Motion, Coletta alleges in conclusory fashion that he detrimentally relied upon Bayshore's representation. However, Coletta does not state what this detrimental reliance was. And as stated above, Coletta knew that he "may not rest upon the mere allegations or denials."

**12.** In rejecting Coletta's contract claim, the Court has not even reached at least two other potential contract defenses: (1) whether Coletta's claim is barred by the applicable statute of limitations; and (2) whether the alleged oral promise falls within the statute of frauds, and therefore, is unenforceable. See F.S.A. § 725.01 (2006)(stating that "any agreement that is not to be performed within the space of one year from the making thereof" is not enforceable unless in writing).